MONCURF, P.
delivered the opinion of the court.
Many questions arose, and were ably argued in this case, but, in our view of it, there will be no necessity for considering more than one or two of them, which depend upon the preliminary ground of jurisdiction. We think that a court of equity had no jurisdiction of the matter of controversy in the original suit, and- that the demurrer to the bill ought therefore to have been sustained.
There is a no better settled proposition of law than that, as a general rule, when a party has an adequate remedy at law he is entitled to none in a court of equity. And . this proposition is as broadly laid down *in the authorities referred to by the learned counsel for the appel *343 lants in this case as anywhere else. Thus, for example, in 3 Graham & Waterman on new trials, p. 1478: “Where the remedy is ample at law, chancery will not interfere;” and in note (2) to the same page, it is said: “It is the rule of the court of chancery not to entertain jurisdiction where there is a plain and adequate remedy at law. ’ ’ And in support of the rule a great number of cases are there cited. Again, Id., p. 1481: “There is a well settled general principle, which admits of but few exceptions, that where a person seeking a right has a complete remedy at law, he shall not go into a court of equity to obtain it. So, on the other hand, where a defendant in an action at law has a full and complete defence in his power, and neglects to avail himself of it, he shall not go into a court of equity for relief.” Again, Id. p. 1487: “The rule is now well established, that equity can give no relief after a judgment at law if the party might have made the defense at law, unless he was prevented from making the defense by the fraud of the opposite party, or b3r some occurrence, without fault or negligence on his own part, or unless the opposite party should fail, in a case of concurrent jurisdiction, to set up the judgment at law as a bar to the relief sought in equity.” Id., p. 1488: “It is a familiar principle, that where a party has had an opportunity to avail himself of a defense at law, and has omitted to do so, he cannot afterwards resort to a court of equity to obtain the benefit of such a defense. Before a court of equity will interfere to deprive a party of the benefit of a judgment he has recovered at law, it must not only appear that it would be against good conscience to enforce the judgment, but also that the party complaining could not have defended himself at law. ’ ’ And in 3 Beading *Cases in Equity, in the notes to the Bari of Oxford’s case, it is said that “the doctrine that equity will not enjoin a judgment on grounds which could or might have been considered and decided by the court in which the judgment was pronounced is thoroughly well settled by the authorities;” of which a great manj' are there cited.
No where has the proposition just referred to been more fully sustained than in this court, as the following cases among others will show: Faulkner’s adm’x v. Harwood, 6 Rand. 125; Slack v. Wood, 9 Gratt. 40; Allen, &c. v. Hamilton, Id. 255; Hudson v. Kline, Id. 379; George v. Strange’s ex’or, 10 Id. 499; Meem v. Rucker, Id. 506. In Hudson v. Kline, supra, the court unanimously say, that “it has been a favorite policy in this state, especially of late, not to afford relief in a court of equity to a party who has a plain remedy at law, except in cases of concurrent jurisdiction. In all other cases he must avail himself of his legal remedy. If without his default he be deprived of all remedy at law, equity may relieve him ; but if any legal remedy remain to him (that is adequate remedy), though he may have lost by his misfortune, and without the fault of his adversary, other concurrent legal remedies, he must resort to his remaining legal remedy. ’ ’
In a case of concurrent jurisdiction a party may elect between his legal and equitable remedies. But having once made his election he is bound by it. A gaming consideration, however, forms an exception to the general rule, requiring a defendant at law to avail himself there of a good legal defence to the action. He is not bound to defend himself at law on account of such consideration, but may suffer judgment to go against him at law, and then obtain relief by bill in equity; or he may apply for such relief before judgment *is obtained, or even action brought against him at law. White v. Washington’s ex’or, 5 Gratt. 645.
Now, the question is, had the appellants an adequate remedy at law in this case?
Their claim was to have credit for the nominal amount of $600, paid by them in Confederate money on the 16th of May 1863, on account of their note for $800 to Saunders, instead of for $100 only, the scaled value at that time of the said"$600 Confederate money, for which sum of $100 a credit was endorsed on the note by St. John, the assignee of Saunders. An action at law was brought and a judgment recovered upon the note by the said assignee against the appellants. Whether they were entitled to credit which they claimed as aforesaid, was only a matter of defense to the said action, and the appropriate mode of making such defense was under a plea of payment to the action. Nothing is clearer than that if they failed to make such defense, without a reasonable excuse for such failure, they are forever concluded from afterwards making it in any court of law or equity.
But they insist that their failure to make their defense in said action was without any fault on their part, and was occasioned by the fact, which they allege, that they had no knowledge of the existence of the action until after the judgment was rendered therein. They say that the summons in the action was never executed on them according to law, and that the record shows the fact.
The Code, ch. 166, § 6, p. 1085, declares, that “any summons or scire facias against any person, may be served as a notice is served under the first section of chapter 163.” By that section, Id. p. 1097, it is provided that “a notice, no particular mode of serving which is prescribed, may be served by delivering a *copy thereof in writing to the party in person; or, if he be not found at his usual place of abode, by delivering such copy, and giving information of its purport, to his wife, or any person found there, who is a member of his family and above the age of sixteen years; or, if neither he nor his wife nor any such person be found there, by leaving such copy posted at the front door of said place of abode. Any sheriff or sergeant thereto required, shall serve a notice within his bailiwick and make return of the man *344 ner and time of service; for a failure to do so he shall forfeit $20. Such return, or a similar return by any other person who verifies it by affidavit, shall be evidence of the manner and time of service.”
The summons in this case was directed to the sheriff of Smyth county, who made a return thereon in these words: “Executed on Robert Goolsby by leaving' a copy at his house with sister; and on James Rector by leaving copy at his house with wife, on 3d March 1866. T. H. Spratt, deputy sheriff, for P. C. Buchanan, S. 3. C. ” The declaration having been filed at March rules, the common order was then entered, which was confirmed at April rules, and at the succeeding term of the Circuit court of said county, to wit,- on the 24th day of August 1866, the office judgment was confirmed, by an order of the court in these words: “John E. Saunders for George W. St. John, plaintiff, against Goolsby & Rector, defendants. • Debt. The defendants having been summoned and not appearing, it is considered by the court, that the judgment awarded in the office against them for $800, with legal interest thereon from the 20th day of July 1861 till paid, and the costs, be affirmed. Subject to a credit for $162.50, paid 20 July 1861, and for $100, paid May 16, 1863. Costs, $7.80.”
*If the summons had been executed in the manner prescribed by law, and the fact had so appeared from 'the return made thereon by the sheriff, then the judgment would have been conclusive, even though the defendants may not have had actual knowledge of the existence of the action before the judgment was rendered. An execution of the summons, in any of the modes prescribed by law, is equivalent to an execution of it, “by delivering a copy thereof in writing to the party in person.”
But in this case, however the fact may be, it does not affirmatively appear from the return that the summons was served in the manner prescribed by law. It does appear therefrom that the summons was executed on the defendants,, not by delivering to them in person a copy thereof, which would certainly have been good legal service, but by [leaving a copy at the house of each with a sister of one , and the wife of the other, without saying that the defendants were not found at their usual places of abode, that the sister in the one case, and the wife in the other, were members of the families of the defendants respectively, and aboye the age of sixteen years, and that he gave information of the purport of the summons to the persons to whom he delivered a copy thereof as aforesaid.
It was argued with great force by the counsel for the appellee, that the legal presumption is, that the sheriff did his duty, and that he did so is not only consistent with his return, but inferable from the terms thereof; and that having said he executed the summons by leaving a copy at their houses with a sister of one and the wife of the other respectively, it must be inferred in the absence of anything to the contrary, that everything was done which the law required to make a good execution.
*It is very probable that in point of fact everything was done which the law required to make a good execution; and that the-only defect in the case consists in the omission of the sheriff to set out in his return all the particulars which constitute a good execution.
But without deciding whether the summons might properly be considered upon the return in the absense of anything to-the contrary as having been duly executed, and conceding, for the purposes of this case, that it could not, and that the summons was not duly executed, how will the case then stand?
It will then stand as if the summons had been returned “Not found,” or without any return endorsed thereon. In which case the clerk, instead of entering the common order, would have issued a new summons. He, therefore, committed a clerical misprision in entering the “common order” and “common order” confirmed at March and April rules 1866, and the office judgment confirmed on the 24th day of August, 1866.
The judgment then • being erroneous by reason of this clerical misprision (which is the utmost extent of the error, if there be one), what is the remedy of the defendants for the correction thereof? Is it by proceedings in error in a court of law, or by a proceeding in injunction in a court of chancery?
Clearly they had a plain, cheap, summary, and complete remedy at law, which would formerly have been by a writ of error coram vobis (or coram nobis, for the writ has each of these names in the books) in the same court in which the error was committed, but is now by a mere motion to the court. 1 Rob. Prac., old edit., p. 644; Gordon v. Frazier, &c., 2 Wash. 130. See also 2 Saun. R., pp. 101 and 101 a; Eubank, &c. v. Rall’s *ex’or, 4 Leigh 308; Shelton’s ex’or v. Welsh’s adm’ors, 7 Leigh 175. The Code, chap. 177, 5 and 6, p. 1135, provides as follows: “? 5. The court in which there is judgment by default, or a decree on a bill taken for confessed, or the judge of the said court in the vacation thereof, may, on motion, reverse such judgment or decree for any error for which an appellate court might reverse it if the following section was not enacted, and give such judgment or decree as ought to be given. ’ ’ And then follows in the same section a provision for the amendment of judgments and decrees by default, in which there is any mistake, and where there is anything in the record whereby such amendment can safely be made, and a provision for the release of any excess in the amount of the recovery beyond what it ought to be. After which comes the next section: “(j 6. No appeal, writ of error or supersedeas, shall be allowed by an appellate court or judge for any matter for which a judgment or decree is liable to be reversed or amended on motion as aforesaid by the court which *345 rendered it, or the judge thereof, until such motion be made and overruled in whole or in part, ’ ’ &c.
Whether, therefore, the error, if any, in this case, was a mere clerical misprision, or an error in the judgment, or whether being a mere clerical misprision, it comes within the meaning of (j? S and 6 aforesaid or not, there was a plain remedy at law for its correction by a mere motion to the court in which it was committed, after reasonable notice to the opposite party.
But it is argued by the counsel of the appellants, that the provisions in the Code before recited apply only to judgments and decrees by default, and that the judgment in this case was not by default; that a ^judgment by default can only be when a defendant has been legally served with process and fails to make defense or to appear. And he refers to authority to sustain that position. However true this may be, technically speaking, certainly the statute in question uses the word ■ “default” in no such restricted sense, but extends to all judgments entered against a party who does not appear, whether legally summoned or not. Where a defendant appears in the court in which the suit is brought, before the judgment is rendered, he can there make his defense, and if a judgment be rendered against him he must apply for relief from any error therein to an appellate court. He is not required, nor has he a right, to go again into the court which rendered the judgment for relief against it before he can apply to an appellate court. But where he does not appear in the inferior court, and a judgment is therefore rendered there against him, the law presumes that the court will correct its own errors so soon as they are brought to its notice by a party having a right to complain of them, and it therefore requires him to apply, in the first place, to that court or the judge thereof for relief, as being the cheapest and best remedy he could have. Whether the judgment be strictly or technical^ by default, or merely quasi by default, the effect and the law, and the reason of the law, are precisely the same. If authority be necessary to sustain this proposition, it is fully sustained by the case of Davis, Sheriff, v. The Commonwealth, 16 Gratt. 134, cited by the counsel for the ap-pellee. In that case it was held by the whole court, Allen, P., delivering the opinion, that all judgments where there has been no appearance by the defendant, are judgments by default, within the meaning of the act before referred to. The proceeding there was by ^motion, where there are no rules, and where, it was supposed there could, therefore, be no judgment by default. But Judge Allen said: “The object of the legislature was to save the parties the delay and costs of an appeal to correct such irregularities and formal errors; errors which seldom affect the merits of the controversy, and which would have been corrected at once by the court if pointed out. The case of a motion ] comes within the reason of the statute, and I think the term ‘judgment by default’ was intended to apply to all judgments where there was default of appearance”; that is, where there was no appearance.
The appellants might have appeared in the Circuit court of Smyth county at any time before the expiration of five years after the rendition of the judgment at law against them and moved the court to set aside the judgment and all the proceedings in the suit subsequent to the return of the summons, on account of the defective return thereof. On such motion the sheriff might have amended his return, on leave obtained from the court for that purpose, and thus have cured the defect. 18 Gratt. 51; 1 Munf. 269; 5 Munf. 407; 6 Id. 181; 4 Leigh 590. But if he failed to do so the court might have sustained the appellants’ motion ; in which case the plaintiff at law would have had to sue out a new summons, and the appellants would then have had an opportunity to make their defense at law. If they did not know of the existence of the suit while it was pending, they certainly knew of it shortly after the judgment was rendered, and within the period of limitation allowed by law for making the motion. The judgment was rendered on the 24th of August 1866; and they admit they had knowledge of it as early as 1868. But, in fact, the record shows they had such knowledge as early as 1867, the next year after it was rendered.
The appellants then had an adequate remedy at law for the wrong of which they complain, and, according to the principle and authorities on that subject before referred to, they are therefore entitled to no relief in equity.
But it is further argued by the counsel for the appellants, that while it is true, as a general rule, that a party having an adequate remedy at law, is, therefore, entitled to none in equity, yet there are exceptions to that rule, and this case is one of them. That the ground for relief in this case is, that the appellants were not served with process in the action at law, which is an established ground for relief in a court of equity; and 3 Graham & Waterman on new trials, p. 1523, and Kibbe v. Benson, 17 Wall. U. S. R. 624, are relied on to sustain this argument. It is true, that it is good ground for relief in a court of equity, that the party complaining was not served with process in an action at law, and was thus unable to make his defense at law ; but that is only upon the principle that he would otherwise be without any remedy, and that he has lost his legal remedy without any fault on his part. The case of Kibbe v. Benson, supra, plainly shows that such is the case. There, as here, the ground relied on for equitable relief was, that the process in the action at law (what in that case was a declaration in ejectment) was not duly executed on the defendant. It appeared from the record in the action that the process had been duly served by leaving a copy with the father of the defendant and a *346 member of his family at his dwelling' house. But the bill denied that the process had been served as stated in the return. And it averred, in addition, that the complainant was ignorant of the commencement or existence of such suit until more than two years had elapsed after the recovery of *the judgment therein, within which time he would have been entitled, under the statutes of Illinois (in which state the case occurred), to move to set it aside.' That, then, was clearly a case for equitable relief, on the well settled principles of law; and Mr. Justice Hunt, in delivering the opinion of the court, refers to the Marine Insurance Company v. Hodgson, 7 Cranch’s R. 336, in which he says the rule is well expressed by C. J. Marshall thus: ‘ ‘Without attempting to draw any precise line to which equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.”
Far different from that case is the one now before us for adjudication, in which it appears that the appellants had a plain and adequate remedy at law, of which they had full notice in time, and might easily have availed themselves; and they did not pretend to assign in their bill any reason whatever for not having so availed themselves. We are therefore of opinion that the demurrer to the original bill ought to have been sustained, and the injunction dissolved, and the bill dismissed.
But, instead of doing that, the Circuit court by its decree of September 2d, 1871, perpetuated the injunction and ordered the judgment in the action at law to be set aside and the cause remanded to rules, &c. That decree was clearly erroneous, and it was competent *for the appel-lee, St. John, to have it reversed, either by the same court on a bill of review (the decree being final) or by this court on an appeal. We have no doubt but that according to the well settled practice, in this state at least, it was a proper case for a bill of review; and one was accordingly filed by leave of the court. It proceeded both upon the ground of error in law, apparent upon the face of the decree, and upon the ground of the discovery of new matter. Of the latter ground no further notice need be taken. The case was regularly proceeded with on the bill of review, until the 2d of September 1872, when the cause came on to be heard, and the court decreed that the said decree of the 2d of September 1871 should be reversed and annulled, that the case of Goolsby & Rector v. Saunders &c. (being the case on the original bill) should stand upon the docket as it did before the said last mentioned decree was rendered, and that said St. John should recover of said Goolsby & Rector his costs expended in the bill of review cause (as it was called). On the same day, to wit: September 2d, 1872, the original cause of Goolsby & Rector v. Saunders, &c. (as it was called), was reinstated on the docket, in pursuance of the decree rendered on the same day in the bill of review cause as aforesaid, and came on to be heard on a motion to dissolve the injunction; and, thereupon, a decree was made dissolving the said injunction. From these two decrees of September 2nd, 1872, or, at least, the former, if not from both, treating them as one decree, this appeal was taken. The two decrees in effect constituted but one decree, and ought to have been embodied in one. There was but one case, the case on the bill of review being but a continuation of the original case in the same court. When on the 2nd of September, 1872, the court on *the bill of review reversed the decree of the 2nd of September, 1871, as it properly did, it ought to have proceeded in the same decree (just as an appellate court would have done) to have rendered such decree as ought to have been rendered on the 2nd of September, 1871, instead of the decree which was actually rendered on that day; that is, to have rendered a decree sustaining the demurrer to the original bill, and dissolving the injunction, and dismissing the bill with costs. Sheppard’s ex’or v. Starke & wife, 3 Munf. 29; Stockton v. Cook, Id. 68; Thornton v. Stewart, 7 Leigh 128. Regarding, as we properly may, the two decrees of September 2nd, 1872, as one decree, they are right as far as they go; that is, they are right in' reversing the decree of September 2nd, 1871, with costs, and in dissolving -the injunction, but they did not go far enough. They ought also to have dismissed the bill. But. the court can make the matter perfect by rendering such decree as ought to have been rendered by the Circuit court.
If the case had not been a proper one for a bill of review, and the court below had erred in giving leave to file it, still we would have arrived at the same result. This appeal would have brought up the whole case, and we could and would have gone back to the first error and reversed the decree of the 2nd of September, 1871, and rendered such decree as the court ought then to have rendered. Only a little more than a year had elapsed after the date of that decree before the appeal was perfected, and it was in full time for an appeal from that decree, even if that be a material matter; which is a question we need not now decide. In any view of the case, therefore, we are of opinion that the demurrer to the original bill ought to have been sustained, the injunction dissolved, and the bill dismissed with costs.
*The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that if the appellants were entitled to any *347 relief at all, on account of the matters stated in their bill, they had an adequate remedy at law, of which they neglected to avail themselves, and are entitled to no relief in a court of equity; and that the Circuit court erred in not sustaining the demurrer to the said bill and dissolving the injunction and dismissing the bill, instead of rendering the decree which was rendered in the cause on the 2d day of September 1871. But the court is further of opinion that it was competent for the appellee, St. John, to have the said error corrected, either by bill of review in the same court or on appeal to this court; and that the Circuit court did not err in giving him leave to file a bill of review in the case; and that there is no error in the two decrees of the 2d day of September 1872, as far as they go, regarding them as constituting but one decree, as, in effect, they are. But they ought to have gone further, and dismissed the original bill with costs. Therefore it is decreed and ordered that so much of the decree or decrees appealed from as are in conflict with the foregoing opinion, if any, be reversed and annulled, and the residue thereof affirmed, and that the appellants pay to the said appellee as the party substantially prevailing, his costs by him about his defense in this behalf expended. And this court proceeding to render such decree as the said Circuit court ought to have rendered, instead of the said two decrees of the 2d of September 1872, it is further decreed and ordered that the said decree of the 2d of September 1871 is erroneous, and be reversed and annulled; that the said demurrer to the original bill be *sustained, the said injunction dissolved and the said original bill dismissed, and that the appellants pay to the said appellee his costs by him in the said Circuit court expended, as well in his defense to the said original bill, as in his prosecution of his bill of review.
Which is ordered to be certified to the said Circuit court of Smyth county.
Decree reversed in favor of appellee.