# W·H E E L I N G.

## CHAPMAN *et al.* v. MAITLAND *et. al.*

Submitted January 18, 1883—Decided November 3, 1883.

1. The plaintiffs instituted their suit in chancery against the defend-
   ants on April 26, 1871, and sued out a summons dated that day,

whereof neither the return day, nor the officer's return on the summons, appeared in the record, nor did it appear that there was ever any personal service of said process on any of the defendants, nor that any order of publication was ever executed or that any attachment issued in the cause, nor did it appear by affidavit or otherwise, that there was any other ground on which to found the jurisdiction of the court than the residence of the defendants in the county in which the suit was brought. HELD :

    I. That the suit abated on the return day of the summons, when it appeared by the return on the summons that the defendants were non-residents ; and that although no such return was in fact made, yet if it appears in the record, by an affidavit filed therein, that the defendants were in fact non-residents—it sufficiently appears, that they were non-residents, and is equivalent to such return ; and

    II. That in such a case the said suit abated, at the farthest, at the expiration of ninety days from the date of such summons.   (p. 345.)

2. The court having by an order entered in said cause after the suit was abated removed the cause to a court in another circuit there to be heard and determined, which court proceeded therein to decree, settling the rights of the parties, and decreeing a sale of the defendants' lands, all such proceedings in said cause subsequent to said abatement are void.   (p. 347.)

3. The only defendant against whom any relief was asked, not having entered a general appearance to said suit, either at rules, or in term, has a right to appear in the cause, and object to the jurisdiction of the court ; and if his objection be overruled, and such ruling be erroneous, this Court will reverse the same, although he afterward appeared to the suit, filed his answer and made full defence thereto, unless he expressly waived such objection ; and such objection to the jurisdiction of the court may be made in his answer to the bill.   (p. 347.)

4. In such a case, this Court will reverse all decrees entered therein, and dismiss the plaintiff's bill, without prejudice to any other proper proceeding which he may institute to obtain the relief or any part thereof, sought to be obtained by his said suit which has been so dismissed.   (p. 347.)

WOODS, JUDGE, furnishes the following statement of the case :

On the 26th of April, 1871, Augustus A. Chapman, Wm. H. French and Manelius Chapman, sued out of the clerk's

office of the circuit court of Mercer county, a summons in chancery against Joseph Maitland, Frank H. Lane, Cornelius Curtis, and certain other defendants, described as the administrator, heirs and widow of one Guy D. French; but when the said summons was returnable, or what return was in fact made thereon does not appear, as they are not copied in the transcript of the record before this Court. But as section 2, chapter 124 of the Code requires such process to be "made returnable within ninety days from the date thereof, in the court on the first day of the term, or to the clerk's office to the first Monday in a month, or to some rule day," and as this Court judicially knows, that the first day of that term of the said court in Mercer county, occurring within ninety days from the date of said summons was the 7th day of May, we know that the said summons could not have been returnable later than the July rules 1871.

At the June rules 1871, an order of publication was taken against the said Maitland, Lane and Curtis, and also against all the other defendants except the administrator, and one of the heirs of Guy D. French, wherein it is stated that it appeared by an affidavit filed, that all the other defendants are non-residents of this State, but the affidavit does not otherwise appear in the record.

It further appears from the certificate of the clerk of said court, that said order of publication was duly posted on the 6th day of June, 1871, but there is no evidence that the same was *ever published*, as required by law; nor does it in any manner appear that the summons was ever executed on any body, or that any of the defendants except Joseph Maitland, ever for any purpose, appeared in the cause. It does not appear when the plaintiffs' bill was filed, except that it was filed at "*rules*" which must have been after the date of the summons, but whether before or after the affidavit for the order of publication was made does not appear. The bill in substance alleged, that the plaintiffs Augustus A. Chapman, Wm. H. French, Manelius Chapman and Guy D. French then dead, being the owner of two hundred and eight tracts of land containing in the aggregate fifty thousand acres, lying within the boundaries, and forming parts of a large survey of five hundred thousand acres granted to Wilson

Cary Nicholas by the State of Virginia, and known as the "Wilson Cary Nicholas survey," situated in the counties of Mercer and Wyoming in West Virginia and in Tazewell county, Virginia, they entered into an agreement under seal with said Joseph Maitland, on the 25th day of November 1854, whereby they agreed to sell to him, and he to buy of them the two hundred and eight smaller tracts containing fifty thousand acres for the price of thirty-six thousand dollars; that on and before November 25, 1854, the said Maitland was the owner of all the residue of said W. C. Nicholas survey of five hundred thousand acres, the title to which was unsettled, and the boundaries thereof not then ascertained. The bill further alleged that Maitland agreed that the said thirty-six thousand dollars should become payable whenever the title to said five hundred thousand acres survey should be settled by sufficient judicial decisions, and when Maitland should make sale of said five hundred thousand acre survey; but if Maitland should be offered for said five hundred thousand acres, a price as great as one hundred and twenty-five thousand dollars, and should refuse to sell, the survey, then from the date of such refusal to sell, the said thirty-six thousand dollars was to bear interest until paid; it further alleged that it was further agreed by Maitland, that upon the execution and delivery to him by said vendors of a deed conveying to him with warranty the said fifty thousand acres of land, he would execute to them his bond in the penalty of fifty thousand dollars, conditioned for the payment of said thirty-six thousand dollars, which bond should constitute a lien not only on the fifty thousand acres sold by them, but also on the whole of the interest then held by Maitland in said five hundred thousand acres survey, or which he might thereafter acquire therein. The bill further alleged that it was further stipulated between said vendors and Maitland, that if the title to said five hundred thousand acres survey should not be established, or the same should not be sold as hereinbefore stated, Maitland would re-convey said fifty thousand acres to said vendors; that the said vendors on the 18th of July, 1855, executed and delivered to Maitland a deed conveying to him their interest in said five

hundred thousand acres, which was recorded in the proper counties, which deed so made and delivered to Maitland was made part of said bill, and is in these words :

"This indenture, made this 18th day of July, 1855, by and between Guy D. French and Araminta D., his wife, William H. French, Augustus A. Chapman and Mary R., his wife, Manelius Chapman and Susan, his wife, of the first part, and Joseph Maitland, of the second part, witnesseth :

"That the said parties of the first part, in consideration of the sum of thirty-six thousand dollars, secured to be paid, but not yet paid to them by the said Joseph Maitland, do grant and convey with special warranty unto the said Joseph Maitland, his heirs and assigns, all their right, title and interest, of every kind whatsoever, in and to all that certain tract, parcel or body of land lying and being in the counties of Mercer, Tazwell and Wyoming, in the State of Virginia, and perhaps extending into other counties, containing five hundred thousand acres of land, according to original survey made for William C. Nicholas on the 9th day of September, 1794, and which was patented to the said Nicholas on the 25th day of June, 1795, lying on Bluestone and Guyandotte rivers and their waters, and especially that portion of the said survey, tract or body of land which is known as 'the reservation,' together with all the proceeds of sales of any portion of the said land which are not yet paid over to the said parties on the sales of any portions of the said lands made by them, and all the rights, liens and equities arising from such sales—to have and to hold the said right, title and interest in the said lands, and the appurtenances of every kind, and the said proceeds of sales, with the rights, liens and equities arising therefrom, unto him, the said Joseph Maitland, his heirs and assigns, to his and their only use and behoof forever. The said parties of the first part, for themselves and their heirs, hereby covenant with the said Maitland, his heirs and assigns, that they will hereafter, whenever required, execute to him such other and further conveyances of the said interests in the said land and the proceeds of sales as they have by any writing heretofore agreed to do, or which may be necessary fully to vest in the said Maitland, his heirs and assigns, a complete and clearly defined title to their interests

in the said land and its appurtenances, and in the said proceeds of sale or so much thereof as they have sold.

"Witness the following signatures and seals:

| | |
|---|---|
| "GUY D. FRENCH, | [SEAL.] |
| "A. D. FRENCH, | [SEAL.] |
| "WILLIAM H. FRENCH, | [SEAL.] |
| "AUGUSTUS A. CHAPMAN, | [SEAL.] |
| "M. R. CHAPMAN, | [SEAL.] |
| "MANELIUS CHAPMAN, | [SEAL.] |
| "SUSAN CHAPMAN, | [SEAL.]" |

The several certificates of acknowledgments by said grantors and of the recordation of said deed in Mercer county, being in proper form are here omitted. It is further alleged in the bill that Maitland on the 25th day of November, 1864, sold the said five hundred thousand acres of land to Frank H. Lane, and Cornelius Curtis for five hundred thousand dollars, which sale was afterwards rescinded, and Maitland retained the land. All other material things agreed to be done on the part of said plaintiffs and Guy D. French to entitle them to demand the execution of said bond of fifty thousand dollars conditioned to secure said thirty-six thousand dollars, are alleged to have been done by them, and that Maitland has failed to execute said bond, pay said thirty-six thousand dollars or any part thereof, or to reconvey said fifty thousand acres to said vendors; and they make the agreement of the 25th of November, 1854, a part of the bill. The plaintiffs pray that the sale to Maitland may be rescinded, and that he be compelled to reconvey the fifty thousand acres of land, or that he be required to execute said bond of fifty thousand dollars, conditioned as aforesaid; or that he be decreed to pay said thirty-six thousand dollars, with interest from November 25, 1864, and that Maitland's interest in said five hundred thousand acres be sold to satisfy the same and for general relief.

It will be observed that there is no allegation in this bill, that the defendant Joseph Maitland who is the only defendant against whom any relief is asked, is a non-resident of this State, or that he ever resided in Mercer county, or that any one, or any part of any of the two hundred and eight smaller tracts composing said fifty thousand acres sold to Maitland,

lies in the county of Mercer, nor does it appear that any attachment was ever issued in the cause.

It further appears, that at a circuit court held for Mercer county on March 18, 1872, the judge of that court deeming it improper for him to hear the cause transferred the same to the circuit court of Summers county, there to be heard and determined. From subsequent proceedings therein, it appears that the circuit court of Summers county, between March 18, 1872, and September 27, 1872, upon the case, as above stated, rendered a decree whereby the court canceled and annulled the agreement of the 25th of November, 1854, and appointed a commission to reconvey the said fifty thousand acres of land to the said vendors, and directed an account to be taken between the plaintiffs and Maitland. At a circuit court held for the county of Summers, on September 27, 1872, the defendant Joseph Maitland for the first time appeared, and filed his petition therein, setting forth that he was a resident of Philadelphia in the State of Pennsylvania, and had never been served with process in said cause, accompanied with his answer, setting forth the defence he desired to make, praying that said decree be set aside, and that he be permitted to file such answer and make such defence, which petition and answer were accordingly filed, and the said decree was set aside, and a rehearing ordered. The defendant Maitland also filed an amended and supplemental answer to the plaintiffs' bill, in both of which answers as well as in said petition he objected to the court proceeding in the cause and insisted that the court had no rightful jurisdiction of his person or of this cause, and he pleaded and relied upon the fact that he had never been served with process in the cause, and that the court had no jurisdiction of the subject of this suit and prayed that the same might for that cause be dismissed. "And not waiving his said plea" to the jurisdiction of the court, Maitland demurred to the plaintiffs' bill. And not waiving his plea or demurrer, the said defendant proceeded in his answers to make full defence to the matters alleged in the bill. Without here setting forth in detail the several matters of defence contained in the answers, it is sufficient to say, that while admitting the pur-

chase of said parcels of land, as set forth in the bill, at the price and payable, as stated in said bill and in the agreement dated November 25, 1854, he denied any other material allegation entitling the plaintiffs to any of the relief prayed for. The plaintiffs having obtained leave to do so at August rules, 1877, filed an amended bill in the names of Manelius Chapman and C. J. Chapman as the administrators of Augustus Chapman, deceased, and of William M. Reynolds and Wm. A. Cooper as the executors of said Wm. H. French, deceased, as plaintiffs against the same defendants and the heirs of certain defendants who had died since the filing of the original bill, but setting up no other new material matter and praying the same relief as in the original bill. At the September term, 1877, of said court the plaintiffs asked leave to amend said amended bill so as to make the same a bill of review, and Maitland, still insisting that the court had no jurisdiction of him or the cause objected, but the objection was overruled and the amended bill was accordingly amended.

To this amended bill Maitland filed his answer on the 21st November, 1877, wherein he again pleaded that he was a citizen of the State of Pennsylvania, and had never been a citizen of West Virginia; that he had never been served with process in this cause nor had the land which is the subject-matter of the suit been attached, and again denied that the court had jurisdiction of the cause, and prayed the benefit of his protest and objection to the process and want of services, and to the want of jurisdiction. And not waiving his said plea he demurred to said amended bill, and having done so, he again answers fully the bill and amended bill, substantially, in the same manner as before, reasserting and reaffirming every affirmation and denial contained in his former answer, and denying every other material allegation of the amended bill. The plaintiffs took no testimony in support of the allegations of the bill, but relied only upon their exhibits filed, and especially, upon the agreement of the 25th of November, 1854. Maitland took and filed the depositions of himself and brother John J. Maitland who acted as his agent in regard to said lands from 1853 to 1865, whereby it is clearly proved that said vendors had

wholly failed to perform the conditions of said agreement of 25th of November, 1854, on their part to be performed, to entitle them to demand either a rescission of said contract, or a reconveyance of said land, or the execution of said bond in the penalty of fifty thousand dollars conditioned to secure the payment of said thirty-six thousand dollars, or to cause interest to accrue thereon, or to compel the payment of said purchase-money at the time when this suit was commenced or at any time since. The depositions also clearly proved that the "general title to the tract of fifty thousand acres of land had never been fully 'established by such decisions of courts either inferior or supreme as would quiet and render unquestionable the title to all of said tract of five hundred thousand acres which has not been held adversely to the parties to said contract and those through whom they claim, with color of title for fourteen years previously to the execution of said agreement, nor by the admissions of all persons who have located or settled upon portions of the tract of five hundred thousand acres, and who have occupied the same under color of title for more than fourteen years previously to the date of said agreement," as required by the fourth and fifth sections of the agreement of the 25th of November, 1854, and also that the defendant Maitland, had never been offered a price for said five hundred thousand acres as high as one hundred and twenty-five thousand dollars which he declined to accept, and that he had never been able to sell the said land, and that said defendant from the date of his said purchase of said fifty thousand acres down to the institution of this suit had vainly used all diligence to perfect and quiet said title, ascertain and fix the boundaries of the five hundred thousand acres, and of said parcels composing said fifty thousand acres, and to sell the same. By said depositions and by the terms of said agreement it was also clearly proved, that of the two hundred and eight tracts of land to which they claimed to have good title, and which they represented to lie within said five hundred thousand acres, they only owned thirty-eight thousand eight hundred and ninety-five and one half acres, leaving a deficiency of eleven thousand one hundred and one and one half acres for which said defendant was entitled to a ratable abatement from

said 'purchase-money when the same should, according to the terms of said agreement become payable, and also other abatements admitted by the plaintiffs' bills, the amount of which could not be ascertained from them. In this state of the pleadings and proofs, the circuit court of Summers county rendered therein the following decree:

"This cause came on this 16th day of April, 1878, to be heard upon the original bill, the answers, the replications to said answers, the amended bill, the answer thereto and exhibits, the replication to said answer, the depositions of witness, and was argued by counsel. On consideration whereof, it is adjudged, ordered and decreed that the said Joseph Maitland, in his own right, and as trustee of Fitzimmons' heirs, may, within thirty days from the rising of this court, reconvey to the plaintiffs the fifty thousand acres of land in the bill and proceedings mentioned, free from any incumbrances which have accrued since the conveyance to said Maitland, to-wit, on the 18th day of July, 1855; and unless said conveyance is made, that then the said Maitland pay unto the plaintiffs the sum of thirty-six thousand dollars, with the interest thereon according to contract in said proceedings mentioned, subject to such credits as shall be ascertained by a commissioner hereby appointed for that purpose. And it is hereby further adjudged, ordered and decreed that E. H. Peck be appointed a special commissioner to state and settle the account indicated in this decree, and report the same to court, together with any matter deemed pertinent by himself or which may be required by any of the parties to be specially stated."

Commissioner Peck on the 7th day of September, 1878, made and returned a report under said decree whereby it appeared that he wholly disregarded the depositions of defendant Maitland and his agent, which were all the depositions in the cause, and that he examined only one witness in the execution of the reference, which does not appear in this record, but which the commissioner says, throws very little light upon the matter of abatement claimed by the defendant, and allowed no credits or abatements, but made six different hypothetical statements of the amount supposed to be due to the plaintiffs varying in amounts from one hundred

and twenty-eight thousand and fifty-nine dollars and fifty-four cents, to forty-three thousand five hundred and twenty-four dollars and forty-eight cents, none of which statements except the *last* which is No. 4 needs to be noticed here. This is founded upon a written proposition dated March 27, 1865, signed by the plaintiffs, to accept from Maitland the sum of sixteen thousand dollars in specie or its equivalent, in full of the purchase-money due on said fifty thousand acres of land, and was filed by the said agent with his deposition as a paper which he knew to be signed by the proper hand-writing of of the vendors. Neither this paper nor the proposition written thereon, was ever mentioned, referred to, or relied on either by the plaintiffs in their bill or amended bill, or by the defendant Maitland in his petition, or in his answers, nor was there any proof offered to show that it had ever been offered, tendered or delivered to Maitland, or that he accepted or ratified it, or ever knew of its existence; yet upon this paper said commissioner reported Maitland indebted to the plaintiffs and the heirs of Guy D. French in the sum of sixteen thousand dollars lars and a *premium* thereon of fifty-four per cent., amounting to eight thousand six hundred and forty dollars, with interest on the aggregate of said sums from March 27, 1865, to the 9th of September, 1878, amounting to eighteen thousand eight hundred and eighty-four dollars and forty-eight cents, aggregating the sum of forty-three thousand five hundred and twenty-four dollars and forty-eight cents. Maitland filed exceptions to the whole report, and also to each of said hypothetical statements, because the same was made by a special, and not by one of the regular commissioners of the court. And the cause coming on to be again heard on the 21st of April, 1879, and on the 19th of September, 1879, upon the papers formerly read, and on the report of Special Commissioner Peck, and the exceptions of defendant Maitland thereto, it was decreed that all of said exceptions, except that to "Statement No. 4" be sustained, and overruled as to "Statement No. 4;" and that said sum of forty-three thousand five hundred and twenty-four dollars and forty-eight cents with interest thereon from the 9th of September, 1878, constituted a lien on the whole of said five hundred thousand

acres of land, and that unless said Maitland within thirty days from the rising of said court pay the same in equal portions to the said Manelius Chapman and to the executors of Wm. H. French, and to the said administrators of Augustus A. Chapman and to the heirs of said Guy D. French, and also pay the costs of the suit, then certain commissioners who were appointed for the purpose, were directed to sell the said five hundred thousand acres of land on the usual terms to pay said debt and costs, and all delinquent taxes due on said land, none of which was stated or ascertained. From these decrees said Maitland obtained an appeal to this Court, and he has assigned many grounds of error therein.

*Davis* and *Price & Preston* and *James H. Ferguson* for appellant, Maitland.

*F. Hereford, G. W. Easley, J. A. Douglass* and *A. Mahood* for appellees.

WOODS, JUDGE :

In the view we have taken of the proceedings in this cause it is unnecessary to notice all the errors assigned, or to decide all the questions raised thereby.

But upon the hypothesis that the court had jurisdiction to hear and determine the cause, it is difficult to conceive, how one of so much importance, could have been prosecuted by the plaintiffs to a final decree without discovering the numerous errors apparent on the face of these proceedings.

The bill is prepared to accomplish one or two purposes; either to obtain a rescission of the contract dated November 25, 1854, and as consequent thereto a reconveyance of said fifty thousand acres of land, or, to enforce the collection of said thirty-six thousand dollars of purchase-money, as a vendor's lien on, and by a sale of, said five hundred thousand acres. The prayer of the bill is also in the alternative, *first* for such rescission and reconveyance; and *secondly*, if the plaintiffs be not entitled to that relief, then, that the five hundred thousand acres be sold and the proceeds thereof, so far as necessary, be applied to the satisfaction of said purchase-money. Considered in the character of a bill seeking only a rescission of said agreement and a reconveyance of

said land, it is wholly insufficient for that purpose, as it does not allege any mistake in the agreement itself, or any fraud or undue influence used by said Maitland in procuring the execution thereof, or any illegality in the contract itself, or any failure of the consideration thereof, or that the same was contrary to public policy or good morals, so that the same ought not to be enforced. Instead of this, the contrary of all of these, manifestly appears upon the face of the bill. As a bill for such a purpose it was clearly demurrable.

Regarding the bill in its alternative aspect, as one brought to enforce the specific execution of said agreement, by selling the five hundred thousand acres of land to enforce the vendors' lien thereon for the payment of said thirty-six thousand dollars it is equally defective; for while the bill alleges that it was intended that said purchase-money should constitute a lien upon the land actually sold, and also upon all the interest then owned by Maitland or which he might thereafter acquire in said five hundred thousand acres,—yet it appears by the allegations of the bill, that said vendors had conveyed to Maitland the legal title to all of their interests in said five hundred thousand acres on July 18, 1855, by deed duly executed, acknowledged and recorded, in which no lien for any part of said purchase-money was retained, and therefore the claim is reduced to a simple demand for the payment of an alleged debt, for the recovery of which the plaintiffs had a plain, complete and adequate remedy at law. As a bill therefore, for such alternative relief it was demurrable, unless it could be maintained upon other good grounds of equitable jurisdiction, which we will hereafter consider.

But waiving for the present all defects in the bill, upon what principle did the special commissioner ignore the defence set up by Maitland in his answers and all the evidence contained in the depositions which was unimpeached and uncontradicted, and wholly disregard the abatements to which said defendants' testimony showed he was entitled? It is true the commissioner reported only sixteen thousand dollars of principal money due, upon the strength of a paper filed in the cause which was neither mentioned nor relied on by the plaintiffs nor defendants, in the pleadings and upon which no issue was made or joined. Upon what principle of

law, did he report, in this case, that Maitland should in addition to said sixteen thousand dollars, also be charged with *fifty-four per cent. premium*, and then interest on said aggregate sum from March 27, 1865, until September 9, 1878, when the uncontradicted proofs in the cause showed that the contingency on which any part of the thirty-six thousand dollars should become payable, had never arisen? To render a decree founded upon matters appearing in evidence only, without being put in issue by the pleadings is clearly erroneous; to overrule an exception for that cause to such a report, and decree the payment of a debt, and a *premium* on the debt, without claim thereto, or proof thereof, is such an error as would of itself be sufficient to reverse such a decree.

But the main question, and the one lying at the foundation of these proceedings is whether the court had jurisdiction to render any decree whatever in this cause?

We have already shown, that said bill as a bill for the rescission of said agreement, and consequent reconveyance of said land, or for the enforcement of said alleged vendors' lien on the same, could not be sustained. Is there disclosed in this record any other equitable ground on which the same may be maintained? This ground must not only appear to exist in this cause, but it must further appear, that the circuit court had jurisdiction of the person of the defendant Maitland, or over the subject-matter of the suit, or over both. Without jurisdiction over his person, a personal judgment or decree against him, would be a nullity; without such jurisdiction, or a seizure of the subject-matter of the suit, such decree or judgment against *the thing* will be a nullity, and with such jurisdiction of the person of said defendant, there may be either a decree *in personam* or *in rem*, or both at the election of the plaintiff. The said court being one of general jurisdiction had power to take jurisdiction of this cause and of the subject-matter thereof, but although it was clothed with legal capacity to take jurisdiction of the subject-matter, yet to give it actual jurisdiction in this particular case, either over the person of Maitland or the land, the bill must be good on general demurrer. Rorer on Judicial Sales, sections 66, 67; 1 J. J. Marshall 166; 6 J. J. Marshall 197. To authorize a personal judgment or decree he must

have been served with process in the cause or he must have appeared thereto in such manner and for such purpose as is equivalent thereto, or as amounts to a waiver thereof. Process in this cause might have been executed either by attaching said land of Maitland and *after* said attachment was returned executed, publishing an order of publication as required by section 17, chapter 106 of the Code, or by personal service of process.' But we have seen that no attachment was issued in this cause, and therefore no service of process could be had by such order of publication, and no such order of publication was ever in fact made. There remained therefore only one mode of serving said process—that is to say by personal service. We have already seen that there is no evidence in this record, that personal service of process upon Maitland was in fact·ever made. On the contrary it appears that at June rules 1871, it was not so made, and that the process must have been returned by the officer, that the defendant Maitland did not reside in Mercer county, and the affidavit recited in the order of publication, which was never executed, must be held as equivalent to such return. An attachment might then, or at any day before the return day of said process, have been sued out and levied on said land, which was not done. *Pulliam* v. *Aler*, 15 Gratt. 54; *Steele* v. *Harkness*, 9 W. Va. 13.

By the third clause of section 1 of chapter 123 of the Code it is provided that an action at law or suit in equity, "if it be to recover land or subject it to a debt, or be against a debtor who resides without, but has estate or debts due him within this State, may be brought in any county wherein such land, estate or debts, or any part may be." And by the second section of said chapter, "in any county wherein the cause of action, or any part thereof arose, although none of the defendants reside therein." By the first clause of said section 1 of said chapter, such action or suit may be "brought in any county wherein any of the defendants reside."

By section 8 of chapter 125 of the Code it is provided, "that when a summons to answer an action or bill is against a defendant whom the officer (receiving it) knows not to reside in *his county*, or to reside *out of the State*, he shall, unless he find him in his county on or before the return day,

return him a non-resident; whereupon, if the court from which such process issued have jurisdiction of the case *only* on the ground of such defendant's residence in said county, the action or suit shall abate as to him; and if he be returned a non-resident of the State, and the court have jurisdiction of the case *only* on the ground that the cause of action arose in the county, the action or suit shall abate as to him."

Now in the case under consideration it does not appear from anything in the record, until after the appearance of Maitland, whether this suit was brought against him in Mercer county, because he resided therein, or because the cause of action or some part thereof arose there. The statute is explicit, in both these cases, that if the court had jurisdiction only. because the defendant resided in Mercer county, or only because the cause of action arose there, and the process was returned showing that in the first case the defendant was a non-resident, and in the latter that he was a non-resident of the State, the suit or action shall abate, and this result in the latter case can only be avoided by showing that the court had jurisdiction of the case upon some other ground, and it is clearly the duty of the party invoking the aid of the court, to make this fact appear. If it do not so appear, it seems to us that it is the reasonable presumption of law, that such other ground of jurisdiction does not exist, and that in such case, it must be presumed that every action or suit brought against an individual would fall under one of these two provisions, and that upon the return of the officer that such defendant is a non resident the suit will abate. But although it may have been intended to prosecute this suit under said third clause of section 1 of chapter 123 of the Code, it does not appear that Maitland ever resided in Mercer county, or that the cause of action arose there, or that any attachment was ever issued in said cause and levied upon said lands, so as to bring them under the control of the court, whereby, with the proper subsequent proceedings the court could have properly sold the same. The order of publication which was taken in the cause but never published in any newspaper, can have no effect whatever. If it had been properly executed it could

not have had the effect to give the court jurisdiction, for such order of publication only enables the party to mature a cause over which it has jurisdiction. We are therefore of opinion, that as no other grounds appear in this cause, to give the court jurisdiction, and as the said Maitland had never then appeared in said cause, nor been served with process therein, and as the record shows that he had in effect been returned a non-resident of the State, the said suit abated, at least as early as the July rules, 1871. *Steele* v. *Harkness*, 9 W. Va. *supra*; *Price, Ex'r* v. *Pinnell*, 4 W. Va. 296.

There remains only to be considered whether the errors committed in this case are cured or waived by Maitland in subsequently appearing to the cause and making full defence thereto, or whether he still had the right to have the cause dismissed for the want of jurisdiction over his person and the subject-matter of the suit.

This question has been considered and decided in several cases in Virginia and in this State, and in every case it has been held that where the defendant has not been properly served with process and has not entered a general appearance in the cause, but has appeared for the purpose of taking advantage of the defective service, or the want of service of process he does not waive his right to do so, if after he has been denied the benefit of this right by the judgment of the court, he makes a full defence to the action or suit. In the case of *Hickam* v. *Larkey*, 6 Gratt. 210, the defendant in an action at law who had not entered his appearance either at rules or in term, has a right upon the calling of the cause to object that it has not been legally matured for trial. In that case the cause was matured for trial against the defendant by proclamation founded upon a *pluries capias*, which was blank as to its date, and was not signed by the clerk,—which was returned "not found." The *pluries capias* being void, when the cause was called for trial the defendant moved the court for leave to appear and quash the *pluries capias* and the return thereon, and all the subsequent proceedings thereon without entering an appearance to the action, which motion was overruled, and the cause was tried and judgment given against him. Upon a writ of error the court of appeals of Virginia for this error reversed the judgment of the circuit

court, quashed the *pluries capias* and return, and set aside all the proceedings subsequent to the suing out of said pretended process.    The same doctrine was held in the case of *Wynn* v. *Wyatt's Adm'x.*, 11 Leigh 585.  In that case the plaintiff sued out a summons to the defendant to answer her action, which was not properly served and the plaintiff sued out an attachment against the defendant's goods to compel an appearance, which being returned executed an office judgment was entered at rules against the defendant, who appeared in term and moved to quash said attachment as an irregular process. The attachment was quashed, and it was held that the defendant's appearance in term to quash the attachment was not an appearance to the action which dispensed with further and proper process.    And upon the hearing of a *supersedeas* to said judgment in the court of appeals of Virginia the same was affirmed, and Judge Standard, delivering the opinion of the court, in substance said, that the effect of a contrary doctrine would be, that the defendant could not free himself from the present or past effect of erroneous process, without forfeiting his right to exemption from judgment until proper process shall be sued out and duly served upon him.    In the case of *Price, Ex'r*, v. *Pinnell, &c.*, 4 W. Va. 296, the plaintiff filed his bill against Pennell and Matthews, alleging that Pennell was a non-resident of the State; that he was indebted to the plaintiff; that he had estate in the county of Greenbrier, consisting of money in the hands of said Matthews, and the bill prayed that the money in the hands of Matthews might be attached and applied to the payment of his debt.    Process was issued against Pennell and Matthews returnable to June rules, 1860, on which the object of the suit was endorsed.  The said Matthews accepted service of process, but the same was never served on Pennell by order of publication or otherwise, and no *alias* process was ever issued, but on June 26, 1861, an affidavit was filed that said Pennell was a non-resident, but no attachment was ever issued.    The bill was taken for confessed as to Matthews, and Pennell filed his answer, insisting that the court had no jurisdiction to proceed in the cause, because he had never been brought before the court by order of publication or personal service of process and because at the time the suit

was commenced as was shown by his affidavit, he was a citizen of the State and resided in Wood county.   The bill was dismissed for want of jurisdiction, and this decree upon an appeal to this Court was affirmed.    Maxwell, judge, delivering the opinion of the court said, "An attachment might have been sued out when said affidavit was filed, but it was not done, and the cause from that time forward should have been treated as discontinued ; that the fact that the answer filed contains a full answer to the bill, cannot be held to waive that part of the answer, which insists that the court cannot proceed until process is served."   In the case of *Steele* v. *Harkness, supra,* the same question came before this Court, and it was again held, that where the plaintiff brought his action and sued out his summons against the defendant returnable to a certain rule day, when he filed his declaration, and the process returned "no inhabitant of my bailiwick," and where nothing was shown in the case on which to found the jurisdiction of the court other than the residence of the defendant,—the suit abated upon the return of the non-residence of the defendant; and that where a defendant not having entered his appearance to the action either at rules or in term he has a right on the calling of the cause to object that it has not been legally matured for trial; and if the court overrules his objection, he has a right to file his exceptions to such ruling, and if such ruling be erroneous, the appellate court will reverse the same, although the defendant afterwards appeared to the action and pleaded fully thereto, unless he expressly waived his exception thereto.   We are of opinion that this is the law upon this question, and we have no reason to depart from it.   The facts presented by this record bring the case fully within these principles.

We are therefore of opinion that the plaintiffs' suit abated as early as the July rules, 1871, and that therefore all the subsequent proceedings therein had by the circuit courts of Mercer and Summers county are erroneous, and that all of the decrees rendered therein must be reversed, with costs to the said Maitland.   It is therefore adjudged, ordered and decreed that all of the decrees rendered in said cause be reversed and annulled, and this Court proceeding to render

such decree as the said circuit court ought to have rendered, it is further adjudged, ordered and decreed that the plaintiffs' said bill be, and the same is hereby dismissed without prejudice to any other action at law or suit in equity which they may be advised is necessary to obtain the relief prayed for in their said bill, and that the said Manelius Chapman out of his proper goods, and the said executors of William H. French, and the said administrators of Augustus A. Chapman out of the goods and chattels of their respective testator and intestate in their respective hands to be administered, do pay to the defendant Joseph Maitland his costs by him about his defence in said circuit court expended, and also his costs about the prosecution of his appeal and *supersedeas* in this Court in this behalf expended.

THE OTHER JUDGES CONCURRED.

DECREES REVERSED.   BILL DISMISSED.