# CHARLESTON.

## W. H. NORMAN v. W. C. WILLIS.

Submitted February 22, 1921.   Decided March 1, 1921.

1.   ATTACHMENT—*Motion to Dismiss Properly Overruled After Attachment and Order of Publication Against Defendant Quashed*

   First point in the syllabus in *Danser* v. *Mallonee*, 77 W. Va. 26, reaffirmed and applied.  (p. 81).

2.   SAME—*Affidavit Held Sufficiently to State Nature of Plaintiff's Claim.*

   An attachment affidavit which states that plaintiff and defendant entered into an agreement, jointly with others, on a given date, for drilling certain oil and gas leases in Pleasants county, by which each person was to share in the profits and bear the expenses according to his interest in the leases; that the defendant had a one-eighth interest, and became liable by reason of the operations being unsuccessful, and of his agreement to pay $338.60 (a one-eighth part of the aggregate

expense), and being so liable requested the plaintiff to pay said sum for him, promising to repay, and the plaintiff did on that day pay off and discharge said indebtedness for defendant, which sum constitutes plaintiff's claim and which defendant refuses and fails to pay; and which affidavit also details the time, place and circumstances surrounding the contraction of said debt, sufficiently states the nature of plaintiff's claim under sec. 1, chap. 106 of the Code.   (p. 82).

Error to Circuit Court, Roane County.

Action by W. H. Norman against W. C. Willis. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Pendleton, Mathews & Bell,* for plaintiff in error.
*Harper & Baker,* for defendant in error.

LIVELY, JUDGE:

W. H. Norman, plaintiff below, and W. C. Willis, defendant below, became jointly interested with others in sinking a test well for oil and gas in "wild cat" territory leased by them, and in the transaction Willis became indebted to Norman in the sum of $338.60 as of the 17th day of March, 1914.   The latter instituted action in assumpsit on March 13, 1919, in the Circuit Court of Roane County, and process thereon was returned by the sheriff on that day endorsed "not found in my bailiwick." On March 15, following, Norman filed affidavit for attachment with the clerk on the ground that Willis was a non-resident of the State, and thereupon an order of attachment was issued and levied upon certain oil and gas interests of the defendant in lands in Roane County, and an order of publication, notifying Willis of the object of the suit and requiring him to appear and protect his interests, was issued at the April rules and duly published. The declaration was filed at the following May rules. At the May term of court defendant appeared by counsel only for the purpose of moving, and did move, to quash the affidavit, and to dismiss the attachment, and the court sustained the motions. The plaintiff excepted, and upon motion of the plaintiff the case was remanded to rules for further process and the issuance of a new attachment. On June 10, 1919, another

summons against the defendant was issued, returnable at July rules, another affidavit for attachment filed, and another attachment issued and levied on said real estate interests of the defendant, likewise followed by order of publication duly published. On September 25, 1919, defendant again appeared specially by counsel and moved to quash the new affidavit and dismiss the new attachment, which motions being overruled, and excepted to, he again appeared for the purpose of moving the court to strike the case from the docket because it had abated upon the return of "not found" or "no inhabitant" on the original process commencing the suit and the quashing of the original affidavit. He also objected to the trial of the case because it had not matured for trial. The court overruled the motion and objection. Thereupon the defendant plead the general issue and the statute of limitations. On May 27, 1920 the case went to trial, which trial resulted in a verdict of $464.45 for the plaintiff, on which judgment was that day entered. This writ of error brings up this judgment for review.

The main error relied upon is that the court could not remand the case to rules after the first affidavit was quashed and the attachment based thereon dismissed. It is asserted that the case went out of court when this affidavit was quashed, and all subsequent proceedings were void and of no effect. To sustain this proposition we are cited to *Miller* v. *Zeigler,* 44 W. Va. 484; *Millar* v. *Whittington,* 77 W. Va. 142; *Flint* v. *Coffin,* 176 Fed. 872; and Wade on Attachments, sec. 161. The first two cases cited were equity suits for debts which were purely legal, and the first case for a debt that was not due. The only ground for equity jurisdiction in these cases was the attachment, and when that was dismissed the equity cause went with it. *Frye* v. *Miley,* 54 W. Va. 324; Hogg's Equity Prin., sec. 37; *Livey* v. *Winton,* 30 W. Va. 554. Section 161 of Wade on Attachment is on the subject of debts not due, to secure which attachments may be issued under statute. *Flint* v. *Coffin, supra,* was a proceeding under the North Carolina attachment statute, where there was a defective affidavit and process, which was the

basis of a judgment and which the circuit court of appeals reversed because of these defects.

This suit is for a purely legal demand, in a law court of general jurisdiction and is instituted under section 1 of chap. 123 of the Code, which provides in part that any action at law may be brought in the circuit court of any county * * * (4) "if it be against a non-resident of the State wherein he may be found, or may have estate or debts due him." If the defendant, being a non-resident, had no estate or debts due him in the county, then the case would be abated for want of jurisdiction, upon return of the process showing the non-residence of the defendant. The attachment issued on March 15, 1919 was levied that day on property of the defendant in the county of Roane. This gave the court jurisdiction. If no property could have been found, and the summons was returned on the return day showing that the defendant was a non-resident and could not be found, no service on him, then the suit would have abated. Under sec. 8 of ch. 125 of the Code, a suit against a non-resident cannot be maintained simply on the ground that the cause of action arose in the county. There must be some other ground, and if it appears that the non-resident defendant has property or debts in the county, then that fact is sufficient to maintain the jurisdiction. In order to make the jurisdiction effective, that property or those debts must be brought within the control of the court by proper process in order to respond to a judgment, if perchance, a judgment be rendered. If the attachment be released because of a defective affidavit, it does not remove the property from the county, and a new attachment may be issued in the same suit upon a proper affidavit. Is not the return of the officer on the attachment, showing that he has found property or debts of the defendant in the county, sufficient to justify the pendency of the suit, the jurisdiction of the court, even though that particular attachment be released? The attachment and return thereon are still a part of the record. We held in *Danser* v. *Mallonee*, 77 W. Va. 26, that in an action at law to recover a debt by attachment and on substituted process

against a non-resident, where the attachment and process has been quashed by defendant's motion on special appearance, the plaintiff has the right to retain the case on the docket for new process and new attachment, if so advised; citing *Park. L. and I. Co.* v. *Lane,* 106 Va. 304; *Goolsby* v. *St. John,* 25 Gratt. 146. In the case of *Cooper* v. *Reynolds,* 10 Wall. 308, the Supreme Court said: "Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it, unquestionably, is in proceedings purely in rem. Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of plaintiff. If the writ of attachment is the lawful writ of the court, and if it is by the proper officer levied upon property liable to the attachment, when such a writ is returned into court, the power of the court over the res is established. The affidavit is the preliminary to issuing the writ. It may be a defective affidavit, or possibly the officer whose duty it is to issue the writ may have failed in some manner to observe all the requisite formalities; but the writ being issued and levied the affidavit has served its purpose and, though a revisory court might see in some such departure from the strict direction of the statute sufficient error to reverse the judgment, we are unable to see how that can deprive the court of jurisdiction acquired by the writ levied upon defendant's property."

The plaintiff filed his affidavit for attachment on March 15, 1920, before the return day of the summons, alleging the non-residence of the debtor, and this, together with the return of the sheriff on the attachment showing property in the county, prevented the suit from being abated on the return day of the summons; although that return only disclosed that the defendant was "not found" in the county. *Chapman* v. *Maitland,* 22 W. Va. 329; *Steele* v. *Harkness,* 9 W. Va. 13.

We conclude that plaintiff's case did not abate upon the

order quashing his attachment on May 22, 1919, and that it was proper for him to retain the case on the docket for further process. "To have dismissed the action from the docket without according to him this right would have been error." *Danser* v. *Mallonee, supra.*

Willis contends that the second affidavit for attachment, made and filed on June 10th, was void as not being filed in a pending suit, and besides that it is insufficient because it does not adequately state the nature of the plaintiff's claim. As the remedy by attachment is harsh and likely to be abused, purely statutory and summary, it is essential that the nature of the plaintiff's claim be so described that the court, as well as the debtor and all other persons interested, can see that the plaintiff has a just and valid claim against defendant. A careful inspection of this affidavit shows that plaintiff, defendant and others entered into an agreement on August 23, 1913, to drill certain real estate in Pleasants County for oil and gas, each to pay his part of the expense and each to participate in the profits; that Willis owned a one-eighth interest; that the drilling proved unprofitable, and afterwards in March, 1914, was abandoned, when the aggregate expense amounted to $2708.81, of which defendant owed $338.60. This he agreed to pay, but on March 17, 1914, requested plaintiff to pay said sum for him, which plaintiff then did, and which sum defendant then promised to repay to plaintiff. This he never did. The affidavit with minuteness details how the claim arose, the dates thereof, the amount, when and how contracted, and the promise to pay. Specific objection is made that the affidavit should have shown (but did not) the names of the others interested with plaintiff and defendant in the oil and gas explorations, as well as the persons to whom the sum of money became due by reason thereof, one-eighth of which sum the plaintiff paid at the instance and request of the defendant; also that the boundaries of the oil and gas leases should have been shown, including the exact location of the lands. We cannot see how these facts can make clearer the "nature" of the plaintiff's claim. It would serve no purpose to set out the affidavit at

large.  The facts vary in each case, and it would likely be no precedent in other cases.  We think the affidavit sufficiently states the nature of the plaintiff's claim.  Surely neither the defendant nor any creditor could be misled.  Upon the refusal of the court to strike the case from the docket, and to quash the second affidavit and dismiss the second attachment, defendant appeared generally, plead non-assumpsit, the statute of limitations, and went to trial.  It was held in *Danser* v. *Mallonee, supra,* that the entry of the motion to dismiss the case from the docket operated as a general appearance, and would sustain a personal judgment.  That question is not material here.  The only other question raised by the record is whether the plaintiff's debt was barred by limitation.  There was no effort to bring the case within any of the exceptions contained in the statute; no special replication to the plea, and no proof offered.  At the date when the defendant left the state and became a non-resident, the running of the statute stopped, but there was nothing to show when he departed, and no special replication on which such evidence could have been based.  *Laidley* v. *Smith,* 32 W. Va. 387.  But it is clear from the evidence that the debt became due and payable on March 17, 1914, and as we decide that the suit began on March 13, 1919, and did not abate, the limitation had not expired.  It was a live debt at the time of judgment.

There is no reversible error in the record, and we affirm the judgment.

*Affirmed.*