# WHEELING.

PEYTON & Co. *v.* CABELL *et al.*

Submitted January 15, 1885.—Decided April 4, 1885.

Under section 1 of chapter 106 of the Acts of 1882 a court of equity has no jurisdiction of a purely legal claim, and no attachment can issue in such a case; and the court having no jurisdiction, the decree entered in such case will be reversed by the appellate court and the bill dismissed.

The facts of the case appear in the opinion of the Court.

*J. W. Harris* for appellant.

*A. F. Mathews* for appellees.

JOHNSON, PRESIDENT:

In February, 1883, the plaintiffs filed their bill in equity in the circuit court of Greenbrier county against the defendants to recover the amount of a judgment for over $600.00, obtained by them against the defendant, Cabell, in the circuit court of the city of Richmond, Virginia. In this suit they sued out an attachment, which was levied on the lands of said Cabell in Greenbrier and Fayette counties. A decree was rendered on April 19, 1883, fixing the amount of Cabell's liability, and another on November 13, 1883, ordering the attached lands in the county of Greenbrier to be sold.

From these two decrees the defendant, Robert Stiles, trustee in the deed of trust from Cabell to himself, to secure certain creditors therein named, having a trust-lien on the said attached lands appealed.

On the threshold we are met with the question: Did the equity-court have jurisdiction of this cause? Courts should always be careful not to decline jurisdiction in any proper case, but they should be equally careful not to assume jurisdiction,

where the law does not give it. This is an attachment in equity on a purely legal demand. Of this there is no doubt. The suit was brought on a judgment for money recovered in a foreign jurisdiction.

In the Code of 1819 chapter 123 is "An act reducing into one the several acts directing the methods of proceeding in courts of equity against absent debtors and other absent defendants and for settling the proceedings on attachments against absconding debtors." Section one of this act provides, "That if in any suit, which hath or hereafter shall be commenced for relief in equity in any superior court in chancery or in any other court against any defendant or defendants, who are out of this country and others within the same having in their hands effects of or otherwise indebted to such absent defendant or defendants, or against any such absent defendant or defendants having lands or tenements within the commonwealth, and the appearance of such absentees be not entered and security given to the satisfaction of the court for performing the decrees, upon affidavit that such defendant or defendants are out of the country, or that upon enquiry at his, her or their usual place of abode, he, she or they could not be found so as to be served with process, in all such cases, such court may make any order and require surety, if it shall be necessary, to restrain the defendants in this country from paying, conveying away or secreting the debts by them owing to or the effects in their hands of such absent defendant or defendants, and for that purpose may order such debts to be paid, and effects to be delivered to the said plaintiff or plaintiffs, upon their giving security for the return thereof to such persons and in such manner as the court shall direct."

Section eleven, chapter one hundred and fifty-one of the Code of 1849, declares: " When any person claims to be entitled in equity to any money or property from any person, against whom and for which an attachment might be sued out of a clerk's office, *if the claim were* recoverable at law," &c., he could have an attachment in equity.

In the Acts of 1852, by chapter 95, section 1, this section was amended to read: "A claim to any debt, or to damages for breach of any contract, against a person who is not a resident of this State, but who has estate or debts due him within

the same, may, if such claim exceed $20.00 exclusive of interest, be maintained in any court of equity for a county or corporation, in which there may be such estate; or a defendant owing any debt to such non-resident, when a person has such claim, or where a person claims to be entitled in equity to any money or property from such person, against whom and for which an attachment might be sued out of a clerk's office, if the claim were recoverable at law, there may be an affidavit according to the nature of the case, conforming as near as its nature will admit to what is specified in previous sections," &c.

This is the same language found in section eleven, of chapter one hundred and fifty-one of the Code of 1860. I know of no change until the Acts of 1867, when the first clause of section one of chapter one hundred and fifty-one of the Code was amended as follows: "When any suit is about to be or is instituted for the recovery of any debt or damage arising out of any contract, or to recover damage for any wrong, the plaintiff may have an order of attachment against the property of the defendant on filing with the clerk of the court his affidavit," &c.

This section is substantially the same as section one chapter one hundred and six of the Code of 1868, and clearly does not confer jurisdiction in equity of a purely legal demand. This Code took effect April 1, 1869, and in less than two years thereafter, on February 27, 1871, the Legislature amended section one of chapter one hundred and six of the Code, and declared that "a claim whether legal or equitable for any debt or liability arising out of contract against a foreign corporation or against a non-resident may be sued for and recovered in a court of equity, and an attachment may issue," &c. Acts of 1871, chapter 136. This act in the clearest manner restores the jurisdiction of the equity-court in attachment-cases to demands purely legal. And so the law remained for more than eleven years, but apparently the same influences, that were at work in the Legislatures of 1867 and 1868, were again present in the Legislature of 1882; and although the practice had been so long settled, the Legislature again changed it, and in chapter one hundred and six, amending and re-enacting chapter one hundred and six of the Code, re-enacted the first clause of chap-

ter one hundred and six, and in a subsequent part of the section provided, that " such attachment may be sued out in a court of equity for a debt or claim legal or equitable *not due,* upon any of the grounds aforesaid, "but the affidavit in such case must show when it will become due." Thus matters stood until the recent session of 1885, when a different policy prevailed, and the Legislature by chapter thirty-eight, again amended section one of chapter one hundred and six of the Code, as amended by chapter one hundred and six of the Acts of 1882, and declared, that " such attachment may be sued out in a court of equity for a debt or claim legal or equitable, whether the *same be due or not,* upon any of the grounds aforesaid."

Unfortunately the plaintiff's suit was instituted while the Act of 1882 was in force. That act was approved March 30, 1882, and took effect ninety days after its passage, and the bill in this suit was filed at February rules, 1883. The demand was purely a legal one and the debt was due when the suit was brought. At that time a court of equity clearly had no jurisdiction in the case.

The decrees of April 19, 1883, and November 13, 1883, are therefore reversed at the costs of the plaintiffs, the appellees; and this court proceeding to render such decree as the circuit court should have rendered, the plaintiffs' bill is dismissed at their costs.

Reversed.