# CHARLESTON.

LIVEY v. WINTON and INSURANCE CO. v. DUNNING.

Submitted June 9, 1887.—Decided November 2, 1887.

1. ATTACHMENT IN EQUITY—FOR LEGAL DEMAND—JURISDICTON.

In September, 1883, there was no statute in this State authorizing an attachment in equity for a purely legal demand, and therefore a bill filed to enforce an attachment-lien for a demand purely legal was dismissed because the court had not jurisdiction. (p. 559.)

2. ATTACHMENT IN EQUITY—JURISDICTION—AMENDED BILL.

If the court had no jurisdiction when the bill was filed, it could not be conferred by an amended bill. (p. 559.)

3. TRUSTS AND TRUSTEES.

A trustee in a deed of trust is the agent of both parties, and bound to act impartially between them. He is bound to bring the estate to the hammer, for the best interest of his *cestui que trust*, and should use all reasonable diligence to obtain the best price for the land. (p. 560.)

4. TRUSTS AND TRUSTEES—ATTACHMENT—EQUITY-JURISDICTION.

Where the owner of a foreign judgment brought a suit in equity, and issued an attachment, and had it levied on lands on which there existed a deed of trust, the trustee in that trust was justified in resorting to a court of equity to have the trust enforced under its supervision, although the court, at the time, had no jurisdiction of attachments in equity for demands purely legal; and although, when these two suits were heard together, it was the duty of the court to dismiss the bill in the attachment-suit, yet the plaintiff in the attachment-suit, having answered the bill in the other suit, attacking the trust-deed as fraudulent as to the foreign judgment, said answer may be treated as a cross-bill, and the latter suit retained, and the whole matter be there litigated and settled. (p. 561, 562.)

5. FRAUD—BETWEEN PERSONS IN CONFIDENTIAL RELATIONS—PROOF
OF FRAUD.

　　Transactions between father and child, husband and wife,
brother and sister, between whom there exists a strong natural
motive to provide for each other, at the expense of creditors, when
sought to be impeached as fraudulent, require less proof to show
fraud, and, on the other hand, when a *prima facie* case is made,
much stronger proof to show fair dealing than would be required
if the transaction were between strangers. (p. 563.)

6. TRUSTS AND TRUSTEES—FRAUD—BURDEN OF PROOF.

　　Where a husband confesses a judgment to a trustee for the ben-
efit of his wife, or executes a trust deed for the same purpose, the
burden is thrown upon the wife to show, as against creditors at-
tacking either for fraud, that the transaction was fair and *bona fide*,
to secure to her a subsisting and valid debt. (p. 564.)

7. TRUSTS AND TRUSTEES—ACCOUNT—WHEN ORDERED.

　　It is improper to order an account merely to establish by testi-
mony the allegations of the bill. (p. 568.)

8. REVERSAL OF JUDGMENT—COMMISSIONER'S REPORT.

　　Where the court hears the cause, as well as the report of the
commissioner, as upon the depositions taken in the cause long af-
ter his report was filed, and sustains an exception to the report, as
to which he could not decide without looking into the deposition
taken in the cause after the report had been filed, and, as to such
matter, decrees against the report, when the same depositions show
that, on another issue as to the amounts due on the demand set up
in the cross-bill, the plaintiff in the original bill shall have large
credits, which the court refuses because it would be against the
finding of the commissioner, when it appears it was improper to
refer the cause to a commissioner, and no exception was made by
the plaintiff to the report, and it appears the court has not con-
sidered the depositions as to both issues, but only one, this is er-
ror, for which the decree will be reversed. (p. 569.)

*E. T. Jones, L. D. Strader, S. V. Woods,* and *A. H. Win-
ton* for appellant.

*S. M. Reynolds, C. P. Sherman,* and *T. B. Swann* for ap-
pellees.

JOHNSON, PRESIDENT:

At the August rules, 1883, the plaintiff in the second of
these causes, the Mutual Life Insurance Company of New
York, filed its bill in the Circuit Court of Randolph county,

in which it alleged that it had at the September term, 1881, at Williamsport, Pennsylvania, in the Federal Court then and there sitting, recovered a judgment against A. B. Dunning and W. W. Winton for $9,000.00 interest, and costs; that it filed a proper affidavit with the clerk of the Circuit Court of Randolph county on the twenty second day of June, 1883, and an attachment was thereupon issued, and levied on a moiety of a number of tracts of land in said county, as the property of the defendant Winton, to satisfy said judgment; that the attachment was duly levied; that, as the statute provides, it recorded a *lis pendens.* The bill alleges that the defendants are non-residents of the State, and prays for a survey and plat of said lands, and that they may be sold to satisfy the said debt, etc. At the September rules, 1883, the bill in the first suit was filed by Thomas Livey, trustee for C. Winton, against W. W. Winton, C. Winton, and the Mutual Life Insurance Company of New York, in which it alleges that W. W. Winton was indebted to said plaintiff, in his character as trustee for C. Winton, in the sum of $28,583.73, and executed a mortgage or deed of trust on the sixth day of April, 1880, whereby he conveyed to the plaintiff, as such trustee, the undivided half of 24 tracts of land in Randolph county; some of which lie in Pocahontas county, West Virginia. The said lands are described in the mortgage, a copy of which is filed as an exhibit with the bill. The bill charges that the debt had been long due, and no part thereof has been paid, and that the *cestui que trust,* C. Winton, had requested the trustee to collect said debt. The plaintiff further alleges that he is informed and believes that the Mutual Life Insurance Company of New York had sued out an attachment upon the said lands, and was seeking to subject them to the payment of a large sum of money, founding its claim on an alleged judgment recovered in the Circuit Court of the United States for the Western District of Pennsylvania against W. W. Winton and others for $9,000.00 with interest and costs. Plaintiff says he is informed and believes that a large part of said judgment had been paid to the said insurance company. The prayer of the bill is that the liens may be ascertained upon the said real estate, and that the court decree a sale of the said undivided

half of said lands, or so much as might be necessary to pay off the plaintiff's mortgage, with interest and costs, and for general relief. On the day the bill was filed, Mrs. Winton, by counsel, answered the bill, admitting all its allegations.

On the eleventh of January, 1884, the causes were heard together, and referred to a commissioner, who was directed "to take proof, ascertain, and report the real estate owned by the defendants, W. W. Winton and Abraham B. Dunning; the state and condition of the title thereto, and the annual rental value thereof; the liens thereon, their character, amounts, and priorities, and to whom owing," etc. He reported as required, and reported the lien by mortgage principal and interest, at $35,653.44; and first in priority, and the next and only other lien, the judgment debt of the Mutual Life Insurance Company of New York, principal and interest and costs, at $12,394.50. The insurance company, by counsel, excepted to this report, because the mortgage was given priority. At December rules, 1883, in the second cause, the plaintiff, the insurance company, filed an amended bill, in which, "by way of amendment to its ·original bill, it complains, and says that in addition to the facts and allegations set up in said original bill, which said original bill is made a part of this amended bill, and asked to be read as a part thereof," that on the sixth of April, 1880, the said mortgage (describing it) was executed, etc. It charges that said mortgage was without valuable consideration, and it was executed for the purpose of hindering, delaying, and defrauding the plaintiff from collecting its debt set up in the original bill, etc. The said Winton "executed the said trust-deed and penal bond therein mentioned (if any such bond was in fact executed) for no other purpose than to reserve for his own use and benefit, in the hands of the said C. Winton, who is his wife, the said several valuable tracts of land, to the prejudice of the rights of the plaintiff and his other creditors. "The bill prays that the said trust deed be set aside, and the land subjected to sale for the satisfaction of plaintiff's demand, and for general relief.

At the September term, 1884, the company filed its answer to the bill of Livey, in which the execution of the trust-deed to Livey is admitted; but it denies that it was

executed for the purpose therein indicated; denies that W. W. Winton was ever indebted to the defendant, C. Winton, or to Livey as her trustee, in the sum of $28,583.73, or in any sum whatever; sets up its judgment for $9,000.00 interest, and costs; denies that a large part of said judgment had been paid; charges that the trust deed was executed without any consideration whatever, except the design of the said W. W. Winton, C. Winton, his wife, and the plaintiff, Thomas Livey, his son-in-law, to defraud respondent out of said debt, and to hinder, delay, and defraud respondent and the other creditors of said W. W. Winton by incumbering said lands with a pretended debt, sufficiently large to swallow up every cent for which said lands could be sold, and thus leave no chance for respondent to collect its just demand; that said trust-deed is not a valid lien on said lands, and ought not to have priority over its attachment-lien. Said respondent prays that said trust-deed be annulled and set aside, at least to the extent that it shall not have priority over said attachment.

At the September term, 1885, W. W. Winton, Livey, trustee, and C. Winton filed their joint and several answer to the bill and amended bill of the insurance company, in which W. W. Winton admits the judgment was recovered as alleged; admits the conveyance to him of the undivided half of the several tracts described; says he knew nothing of the alleged attachment-proceedings, only as he had been advised by his counsel; and it is submitted that these proceedings are illegal, void, and of no effect, and prays the judgment of the court thereon. They jointly admit the execution of the trust-deed, but wholly deny that the said deed was executed without valuable consideration, or for the purpose of hindering, delaying, and defrauding creditors of the plaintiff in this cause, or to prevent said plaintiff from collecting his alleged debt; but the said W. W. Winton alleges and affirms that "the execution of the same to said Livey, as trustee, was to secure to said C. Winton a just debt arising from advancements made out of the sole and separate estate and property of the said C. Winton to W. W. Winton;" that the plaintiff claims against respondent W. W. Winton alone by reason of his becoming the mere surety of A. B. Dunning, the principal debtor; that the debt

was abundantly secured by mortgage upon real estate owned by said principal obligor; that it is neither equitable or conscionable to suppose or allege, as the plaintiff does in its amended bill, that respondents, or any one of them, contemplated fraud, or hindering or delaying of creditors, in any way whatever, by the making of said trust-deed to secure a true and just debt due by W. W. Winton long anterior to his becoming the surety, as aforesaid, of the said Abraham B. Dunning; the plaintiff's claim, as aforesaid, being amply secured by Dunning's mortgage,—a claim, at best, to the satisfaction of which respondent might or might not be called upon to contribute. They pray to be hence dismissed, etc.

Many depositions were taken and filed in the respective causes after they had been ordered to be heard together. On September 21, 1885, the said causes were heard together on the papers theretofore read, answers, replication thereto, report of commissioner, and exceptions thereto, and upon the depositions and arguments of counsel. The exception to the report was sustained, but in other respects the report was confirmed; and the court held the deed of trust, as to the judgment of the Mutual Life Insurance Company, void; and the said company in open court admitting that defendant, W. W. Winton, was entitled to a credit on said judgment as of the twentieth day of May, 1884, of $3,359.49, credited it with that sum, and placed the debt of the insurance company first in priority, and that of the plaintiff, Livey, trustee, second, and decreed the sale of the property to pay the claims so audited. From this decree, Livey, trustee, appealed.

The bill of the insurance company was filed at August rules, 1883, to enforce a purely legal demand. It is clear that at that time equity did not have jurisdiction in attachment for purely legal claims. *Peyton* v. *Cabell*, 25 W. Va. 540. But it is insisted that the amended bill made a good cause on the ground of fraud. The court had no jurisdiction of the cause, as it appeared on the face of the bill, and an amended bill could not be filed to give the court jurisdiction. *Piercy* v. *Beckett*, 15 W. Va. 444; *Burlew* v. *Quarrier*, 16 W. Va. 108; *Williams* v. *County Court*, 26 W. Va. 488, and *Straughan* v. *Hallwood*, *ante*, 274. Therefore the

decree as to the second of said suits must be reversed, and the bill and amended bills dismissed, with costs.

As it was the duty of the Circuit Court on the hearing to dismiss the bill and amended bill of the insurance company; and that company having answered the bill of Livey, trustee, charging fraud in the trust-deed; and the bill of Livey, trustee, setting up the fact that an attachment in equity had been sued out, and the property, the subject of the trust, seized, and alleging and charging that there had been large payments made on the judgment on which the attachment was sued out; and the defendant claiming that the trust was fraudulent as to its debt, and therefore the attachment-liens should have priority over the trust-lien,—could the court then treat the answer of the insurance company as a cross-bill, and go on with the cause to a final decree? This depends on whether the bill of the trustee, Livey, had any standing in court; whether equity had jurisdiction of that suit. An inspection of the instrument—indiscriminately called in the record a " mortgage " and a " deed of trust "— will clearly show that it is a deed of trust; and it clearly appears that under our statute, unless there was something in the way which made it the duty of the trustee to resort to a court of equity for aid, he could have advertised the property under his power and sold it. In *Rossette* v. *Fisher*, 11 Grat. 498, Moncure, J., for the court, said: " A trustee in a deed of trust is the agent of both parties, and bound to act impartially between them; nor ought he to permit the urgency of the creditors to force the sale under circumstances injurious to the debtor at an inadequate price. 1 Lom. Dig. 323; *Quarles* v. *Lacy*, 4 Munf. 251. He is 'bound to bring the estate to the hammer,' as has been said by Lord Eldon, 'under every possible advantage to *cestuis que trust*,' and he should use all reasonable diligence to obtain the best price. Hill, Trustees, 497, marg., and the cases cited. He may and ought, on his own motion, to apply to a court of equity to remove impediments to a fair execution of his trust, to remove any cloud hanging over the title, and to adjust accounts, if necessary, in order to ascertain the actual debt which ought to be raised by the sale, or the amount of prior incumbrances; and he will be justified in delaying,

for these preliminary purposes, the sale of the property, until such resort may be had to a court of equity. If he should fail, however, to do this, the party injured by his default has an unquestionable right to do it, whether such party be the creditor secured by the deed, or a subsequent incumbrancer, or the debtor himself, or his assigns; and this may be done notwithstanding the impediments in the way to a fair sale may have been known to the debtor at the time of the execution of the deed, and the removal of them before the time prescribed in the deed for the sale was impeachable, and could not therefore have been contemplated by him." Now, here, it is true, there is no prior incumbrance, but the trust-subject itself is seized by a court of equity. Could a sale, under these circumstances, have been properly had? Could the trustee, as the agent both of the creditor and debtor, under these circumstances, " bring the estate to the hammer, under every possible advantage to his *cestuis que trust?* " We think not; and it would have very materially interfered with the sale while the land was so seized.

But it is said the court which had seized the property had no jurisdiction. True; but the effect upon the sale would have been the same as if it had jurisdiction. Bidders at the sale would not have known that the attachment was void because of want of jurisdiction in the court in which it was pending. While it is universally held that an order or judgment entered by a court having no jurisdiction to enter it is absolutely void, and may anywhere be attacked collaterally, yet it is also held that a writ of error or appeal will lie to reverse said order. *Ambler* v. *Leach*, 15 W. Va. 677. In *Bryan* v. *Stump*, 8 Grat. 241, it was held that the question whether an acknowledgment of a married woman was or was not valid was so doubtful as to cast a cloud on the title of the land, and that, under the circumstances of that case, a sale should not be made under the trust until the cloud was removed. Here, the Circuit Court held its jurisdiction to the end, and entered its decree. Surely the bidders at a trust-sale would be more liable to think the court had jurisdiction than the court itself. We think, the trustee, Livey, was justified in resorting to a court of equity to have his trust there enforced, after the difficulties of a fair sale of the

71

trust-subject were removed. Although it was the duty of the court, when the first order was made referring the cause to a commissioner, to dismiss the bill and amended bill of the insurance company, yet, if it had done so, it could retain the other cause, and proceed to final decree. Where a bill was filed to subject land to the payment of a debt, which land had been conveyed by the debtor to secure a prior debt, and the bill charged that said debt was fraudulent, and the charge failed for want of proof, it was held proper to proceed with the cause, and decree the surplus to the plaintiff. *Barger* v. *Buckland*, 28 Grat. 850. A court, having jurisdiction, enjoined a sale under a trust-deed until the true amount of the debt, and to whom due, was ascertained, and it appeared there was no reason to delay the sale. The court in its discretion, in such a case, may either dissolve the injunction, and dismiss the bill, or may retain the cause, and execute the trust under its own supervision. *Crenshaw* v. *Seigfried*, 24 Grat. 272. It would have been proper, therefore, in this case, to have retained the bill, even had the bill of the insurance company been dismissed at the earliest opportunity, especially as the trustee desired to remain in the court.

The answer of the insurance company to the bill of the trustee charged distinctly that the trust was executed with intent to defraud the defendant and other creditors of the said W. W. Winton, and prayed that said deed be set aside and annulled, at least, to the extent that it should not have priority over its attachment. In *Mettert's Adm'r* v. *Hagan*, 18 Grat. 231, it was held that though, according to the strict rules of pleading, a bill or cross-bill should have been filed to set aside the deed, yet the answer of M's administrator may, for that purpose, be treated as a cross-bill, so as to enable the court to do ample justice in the case. In *Sturm* v. *Fleming*, 22 W. Va. 404, a petition filed was treated as an original bill; and there both Virginia and West Virginia authorities are cited. We are authorized, therefore, and will treat the answer so filed in this cause as a cross-bill, and, as a consequence, the same result will follow as if the said insurance company had filed a bill to set aside, for fraud as to its judgment, the said trust-deed. In *Watkins*

v. *Wortman*, 19 W. Va. 78, it was held that a foreign judgment is a debt, and a suit in equity can be maintained on it to avoid a fraudulent or voluntary conveyance, without first having obtained a judgment at law in this State, under section 2, ch. 133 of the Code of 1868. The issues made by the bill and answer were—*First*, was the trust-deed fraudulent as to the demand of defendant or plaintiff in the cross-bill? and, *second*, had the amount of the foreign judgment been reduced by payments? The question whether the deed of trust from W. W. Winton to Thomas Livey, trustee, to secure Catharine Winton her large claims against her husband was fraudulent and void as to the foreign judgment, was clearly raised by the issue, and was by the court below held to be fraudulent and void as to said judgment. Was this a correct conclusion from the evidence in the cause, and the law applicable thereto? If the deed was executed with intent to defraud any of the creditors of W. W. Winton, it is void, not only as to that creditor, but as to any other creditor who may choose to take advantage of it. *Lockhard* v. *Beckley*, 10, W. Va. 87. It will not avail, therefore, to insist that the insurance company could not take advantage of the fraud, because Winton, at the time, may have supposed that the debt due the insurance company was amply secured by Dunning's mortgage.

The record shows that Mrs. C. Winton is the wife of W. W. Winton, the debtor, and that Thomas Livey is the son-in-law of said W. W. Winton. Transactions between father and child, husband and wife, brother and sister, between whom there exists a strong natural motive to provide for each other at the expense of creditors, when sought to be impeached as fraudulent, require less proof to show fraud, and, on the other hand, when a *prima facie* case of fraud is made, stronger proof to show fair dealing, than would be required if the transaction were between strangers. *Burt* v. *Timmons*, 29 W. Va. 441, 2 S. E. Rep. 780. In *Gault* v. *Saffin*, 44 Pa. St. 307, it was held that the ownership by a wife of real or personal property must, as against existing creditors of her husband, be established by clear and full proof that she paid for it with her own separate funds; it is not enough that she had the means of paying. In *Keeney*

v. *Good*, 21 Pa. St. 349, it was held that no mere agreement between husband and wife, whether in writing or verbal, will avail against creditors of the husband, without proof that the property belonged to his wife independent of the agreement between themselves. Mere evidence *that she purchased it* is not sufficient to give her title; it must be satisfactorily shown that it was paid for with her own separate funds. In the absence of such proof, the presumption is violent that the husband furnished the means of payment. In *Wilson* v. *Silkman*, 97 Pa. St. 509, it was held that, where a man transfers either real or personal property to his wife, the presumption is that it is a gift from him to her; that, where a husband confesses a judgment to a trustee in favor of his wife, it is necessary for the wife, in a contest with her husband's creditors, whose debts existed when the judgment was confessed, to establish that the judgment was *bona fide* to secure a debt of the wife from the husband from the separate estate of the wife. In the absence of such proof, the judgment will be deemed fraudulent and void as against such creditors. In *Rose* v. *Brown*, 11 W. Va. 122, it was held that, in the case of a purchase by a wife during coverture, the burden is on her to prove distinctly that she paid for the thing purchased with funds not furnished by her husband. Evidence that she purchased amounts to nothing, unless it is accompanied by clear and full proof that she paid for it with her own separate funds. In the absence of such proof, the presumption is that her husband furnished the means of payment. This case has been approved a number of times. *Stockdale* v. *Harris*, 23 W. Va. 499; *Herzog* v. *Weiler*, 24 W. Va. 199; *Maxwell* v. *Hanshaw*, Id. 405; *Core* v. *Cunningham*, 27 W. Va. 207; *Burt* v. *Timmons*, 29 W. Va. 441, 2 S. E. Rep. 780. In *McGinnis* v. *Curry*, 13 W. Va. 29, where it appeared that a wife sold her farm in Pennsylvania, which was her sole and separate property, and received the purchase-money, and handed a portion of it over to her husband, and he invested it in a farm in Missouri, with consent and approbation of his wife, and, with her approval, took the deed to himself. He then, with her knowledge, exchanged this farm for one in West Virginia, and the deed for it was

made to him. He afterwards sold a portion of this farm, and he and his family continued to reside on the residue of the farm 18 months. During all this time his wife set up no claim to either the Missouri farm or West Virginia farm, or to the money invested in them. He then, becoming involved, conveyed to his son all of the West Virginia farm not previously sold, for the sole and separate use of his wife, and $2,500 in cash paid by her, but in fact no cash was then paid. Held that, under the circumstances, a gift of the proceeds of her farm to her husband will be presumed, and that the conveyance to his son for the sole and separate use of his wife was fraudulent and void as to the creditors of her husband.

What are the facts and circumstances here? At a time when Winton was deeply involved in debt,—in fact, I think, insolvent,—on the twenty fifth day of April, 1879, he executed the following judgment-note, as it is called in Pennsylvania:

"$34,260.00.                    SCRANTON, PA., April 25, 1879.

"Five days after date, for value received, I promise to pay Thomas Livey, trustee for C. Winton, or bearer, the sum of $34,260.00, with interest, without stay of execution; and do hereby confess judgment for the said sum, with interest, cost of suit; and I do further waive all rights, the exemption laws of the Commonwealth of Pennsylvania, and all bankrupt laws of the United States, now in force, or that may hereafter be in force, and confess condemnation of real estate.

"W. W. WINTON."

On the same day he executed another note of like character to the same party for $44,373.78. There is copied into the record section 22 of Acts of the Commonwealth of Pennsylvania, approved April 15, 1851, under which the judgment was confessed, or to which it is claimed it applies. It is as follows: "It shall be lawful for married women to loan to their husbands moneys, being of the separate estate of the wife, and to take in security therefor a judgment or mortgage against the estate of the husband, in the name of a third person, who shall act as trustee for such married

woman; and any such security theretofore or hereafter taken *bona fide* to secure such loan or moneys received by the husband from the proceeds of the real or personal estate of the wife, shall be as good and valid in law against the estate of the husband, as though the same had been invested by a trustee appointed by the court." It was claimed in *Wilson* v. *Silkman*, 97 Pa. St. before cited, that the confessed judgment under the same provision was good; yet the court held that when a husband confesses a judgment to a trustee in favor of his wife, it is necessary for the wife, in a contest with her husband's creditors, whose debts existed when the judgment was confessed, to establish that the judgment was given to her *bona fide* to secure a debt of the wife from the husband from the separate estate of the wife; in the absence of such proof, the judgment will be deemed fraudulent and void as to such creditors. The confessed judgment has no more sanctity as to strangers than a note, bond, or deed of trust which is executed to the wife, or to a trustee for her benefit by the husband. *Stewart* v. *Stewart*, 27 W. Va. 167.

Winton attempts to show how he was indebted to his wife. He says: "On the fifteenth day of November, 1854, my wife and I sold 175 acres of valuable coal lands, located in what was then Providence, now included in the First and Second wards of the city of Scranton, for the sum of $50,000.00. About 108 acres of the above-mentioned land belonged to my wife, which she inherited from her father, Henry Heermans, deceased. On the first day of December, 1857, a deed was given by W. W. Winton and his wife, Catharine, to the New York and Pennsylvania Coal Company for said 175 acres of coal land." That a mortgage to secure $1,500.00 of the said purchase money was on the first December, 1857, executed to secure Mrs. Winton. That the sale of the coal land was on interest from first January, 1856. He says that "I made this estimate by rule of three,—that if 175 acres bring $50,000.00, what are 108 acres worth? *Answer.* $30,857.14. * * * This sum of $30,857.14 was given by me and my wife and her counsel as a fair proportion for the 108 acres she inherited. We added interest on this sum from January 1,

1856, to December 1, 1857; making $3,509.57, which added to the principal make $34,260.20. My judgment notes were made up as shown by Exhibits D and E. I owed my wife for the matters as contained in the exhibits. I told her that if she would allow me to use the money received for the 108 acres of land, that I would pay her for the same, with interest from the date of the sale. * * * For a portion of her land described in said contract [of sale] the New York and Pennsylvania Coal Company gave her the mortgage marked "Exhibit B" for $15,000.00. I received the full amount of this mortgage, and used the money in my business. I agreed to refund the same, together with interest, from time to time, perhaps every year since I have owed her, up to the time of giving her my notes; and since that time I have agreed to pay her the full value of her share, 108 acres of land, with interest, as I received all the purchase-money therefor, and used it for my individual outside business transactions. I owed her for the *pro rata* share of the 108 acres of land, in addition to the mortgage and interest, making a total, April 25, 1872, [should be 1879,] $44,323.78. When I collected these moneys belonging to my wife I was solvent." Therefore, for about 20 years he owed all this large amount of money to his wife, yet all that time never gave her any written evidence of the debt; executed the Dunning bond as security in 1876; and when, in 1879, creditors seemed to be restless as well as numerous, he sought to save something from the wreck, by executing these notes to his wife, on which judgments were soon after entered, and then executed, on the sixth day of April, 1880, the deed of trust, which was recorded in the mountains of West Virginia, where he thought it would be safe from the reach of hungry creditors. At a meeting of creditors of W. W. Winton held on the twentieth day of June, 1878, Winton stated the full amount of his indebtedness, which he proposed to secure by a mortgage, was $140,000.00. He said that there were certain parties at home who did not care to come into the arrangement, or, at least, whom he could satisfy by assigning to them certain land contracts on which money was due to him. He said there were about $11,000.00 due to such parties, whom he proposed to secure

in that way. This testimony is by R. W. Archabald, the secretary of the meeting. He said there were several meetings of the creditors which he attended, and said : " I swear that Mr. Winton did not mention any indebtedness to his wife. He did not mention such an indebtedness at any meeting which I attended." The record is a very large one, over 300 printed pages, and I do not propose to further refer to the evidence ; but it shows clearly, both under the Pennsylvania and West Virginia decisions, that the confessed judgment, as well as the deed of trust, were voluntary, and were confessed and executed with intent to hinder, delay, and defraud his creditors ; and is therefore void as to the judgment of the Mutual Life Insurance Company of New York. The court did not err, therefore, in so holding, and giving the judgment precedence over the trust deed.

Did the court err, to the prejudice of the plaintiff, in fixing the amount due on the foreign judgment? It is improper to order an account merely to establish, by testimony, the allegations of the bill. *Tilden* v. *Maslin*, 5 W. Va. 377 ; *Lee County Justices* v. *Fulkerson*, 21 Grat. 182. It is wholly unnecessary and improper to refer a cause to a commissioner, to ascertain and report the amount and priorities of liens, when it is evident from the pleadings that there are not more than two liens on the property. *Anderson* v. *Nagle*, 12 W. Va. 98. Where the issues are distinctly made as to all matters which are not mere matters of account or the like, these issues ought to be settled by the court before a reference is made, because it is not proper for a commissioner to hear testimony as to matters which it would be improper for him to decide. When a cause has been referred to a commissioner before proof was taken upon a certain issue therein, where it was proper for him to make inquiry and report as to some matters involved, and he took testimony on the issues, which it was not proper for him to decide, and he returns his report to the court, which decides matters not properly referred to him, and the court hears the cause on the report, so far as it is made on matters properly before him, and hears and decides it as to the other matters on the depositions taken in the cause before the

commissioners, and this Court could see that no party was prejudiced thereby, it would not reverse the decree because of such irregularity. But where the court hears the cause, as well on the report of the commissioner, as upon the depositions taken in the cause, but not before the commissioner, but long after his report was filed, and sustains an exception to the report, as to which he could not decide without looking into the depositions taken in the cause after the report had been filed, and, as to such matter, decrees against the report, when the same depositions shows that, on another issue as to the amount due on the demand set up on the cross-bill, the plaintiff in the original bill should have large credits, which the court refuses, because it would be against the finding of the commissioner, when it was improper to have referred the cause to a commissioner, and no exception was made by the plaintiff to the report, and it appears that the court has not read the depositions as to both issues, but only one, and has therefore erred to the prejudice of the plaintiff, this is error, for which the decree should be reversed. The cause was referred to the commissioner on the eleventh day of January, 1884, to ascertain the lands of the defendants, the title thereto, and annual rental value thereof, and liens thereon, to whom owing, their character, amounts, and priorities. This report was completed on the first day of May, 1884, and as the final decree shows, was filed in the causes on the thirteenth day of May, 1884. With this report are returned two depositions only, as to the annual rental value of the land. The record shows that the depositions for the plaintiff were commenced on the —— day of May, 1885. As to the depositions taken for the insurance company, the entry in the record is: "The following is a copy of plaintiffs' depositions in the second above styled cause, filed September 10, 1884." Therefore it is clear that none of the depositions filed in the cause, except the two which accompany the report, were before the commissioner, or considered by him for any purpose. The decree shows that "these causes came on this day to be again heard together, upon the papers theretofore read; former orders and decrees herein; and the joint and separate answers of the defendants, W. W. Winton, Thomas Livey, trustee, for C.

Winton, and C. Winton, filed in the second-named cause; general replications to said answers; and the answer of the Mutual Life Ins. Co. of N. Y. in the first named cause; general replications to said answer; and upon report of Commissioner Claud Goff, made and filed in these causes on the thirteenth day of May, 1884, to which there is an exception entered thereon; and upon the depositions of witnesses and exhibits and other papers filed herein, and was argued by counsel. On consideration thereof, it is adjudged, ordered, and decreed that the exception to said commissioner's report be sustained, and the said commissioner's report be confirmed in all other respects." It then proceeds to decree the deed of trust void as to the foreign judgment, and then proceeds: And the plaintiff, the Mutual Life Ins. Co. of N. Y., now in open court admitting that the defendant, W. W. Winton, is entitled to a credit upon its debt mentioned in said commissioner's report of $3,349.49, as of the twentieth day of May, 1884, upon which liens due to the said plaintiffs, the Mutual Life Ins. Co. of N. Y., there is due the sum of $9,045.01, with interest thereon from the twentieth of May, 1884;" and then it places the trust deed second, and provides for the sale of the property to pay the said debts. Why did the counsel for the insurance company admit in open court that large credit? Because he knew it was involved in the issue, and he could not escape it. The court would not have given that credit although it distinctly appears in the depositions that Winton's property, under an execution issued on this very judgment, had been sold, and over $3,000.00 realized. The court evidently thought that it required an exception to the report to enable it to look at the depositions to see whether the trust deed was fraudulent; and that because no exception had been made, either by Livey, trustee, or W. W. Winton, as to the amount of the judgment yet remaining, he would not look into the testimony on that question. The causes, without regard to the report of the commissioner, should have been heard on the depositions as to both the points involved in the issue; that is, was the trust deed fraudulent; and what has been paid on the judgment? The court was evidently misled by the report; and no exception being

made, heard the cause, on *the report unexcepted to* as to the amount of the judgment due, and on *the report* excepted to, *and depositions* taken long after the report was filed, as to whether the deed of trust was fraudulent. Not having heard the same on both issues on the depositions, the court did not give its judgment as to the amount of the said foreign judgment; considering, evidently, he had no right to do so in the absence of an exception to the report,—which was obviously wrong, if he had a right to read the depositions as to whether the deed was fraudulent. For this reason the decree as to the first of said causes must also be reversed.

We have carefully looked into these depositions and we find it is very probable that W. W. Winton is entitled to a further credit of about $6,000.00, if his pleadings will allow him to take advantage of it. The record shows, in its different executions, issued on this judgment, that F. G. Burnham and C. P. Sherman were counsel for the plaintiff, the insurance company; and that when Dunning's property was sold on the thirtieth day of November, 1880, under an execution, that it was bid in by C. P. Sherman for F. G. Burnham for $100.00. The property was afterwards sold for more than $6,000.00. If there was a fraud committed in the sale of that property, by which Dunning was cheated out of it, and no pretense was made that anything should be credited on the judgment except the miserable pittance of $100 purchase-money, or what was left after the cost of sale, then we should unhesitatingly say that Dunning should have looked to the courts of his own State for redress, and, if he did not receive it, he certainly would be remediless here, and so would Winton with respect thereto; but if the sale was really a continuance of the mortgage, and anything was realized thereon for the benefit of the insurance company, then it should be credited on the judgment for Winton's benefit. C. P. Sherman in his deposition, on cross-examination, says: " I bought the property for Mr. Burnham as his attorney. He paid the 5 per cent. which was paid to Reynolds, as commission to agent for sale of land. The insurance company realized the full amount of the sale of the property, less expenses. Mr. Burnham conveyed the property to Messrs. Knickerbacker and Schornmaker. *Mr. Burnham had given the company a*

*mortgage on the premises for the amount of Dunning's original mortgage debt, on which they received about $6,000.00.*" Now, *prima facie*, this shows that the insurance company received out of Dunning's property about $6,000.00, for which no credit is given on the judgment. This fact is not stated in the bill of Livey, trustee. It ought to be there to give his *cestui que trust* the benefit of the credit, for it was not money directly paid by either Dunning or Winton. When this cause is remanded to the Circuit Court of Randolph county, leave will be given the said trustee to amend his bill, and set up this matter specifically, with any other credits to which Winton may be entitled; and leave will be given to the defendant also to amend his answer or cross-bill to meet any new charges or allegations in the bill.

The decree of the Circuit Court of Randolph county rendered on the eleventh day of January, 1884, and on the twenty-first day of September, 1885, are reversed, with costs to Livey, trustee, against the Mutual Life Insurance Company of New York; the bill and amended bill of the last-named company dismissed, with costs, which shall not include the costs of the depositions, as they were taken in the causes heard together; and the cause is remanded, for further proceedings to be had according to this opinion.

REVERSED. REMANDED.