## ARCHER v. LONG.

1. In action for the recovery of personal property a verdict which calls for a delivery or return of the property in dispute, is insufficient and illegal unless it also assesses the value of the property, even though there be no testimony as to value. Such deficiency in the verdict cannot be cured by waiver of one of the parties.

2. While an insolvent debtor may, by *bona fide* mortgages, confessions of judgment, or conveyances, intended merely as securities, give a preference to one or more of his creditors; yet if such instruments are really intended to operate as the means of transferring his property to preferred creditors and not merely as securities, they must be declared null and void; and it matters not whether there be one paper or more than one, if they are connected together and operate as an assignment and were intended to give a preference.

3. A conveyance made in payment of a *bona fide* debt, but with intent to hinder, delay, and defraud other creditors, is void.

4. A debtor cannot prefer one creditor to another, in consideration of some benefit to himself. A transfer of property by a debtor to his creditor, with an immediate gift by the creditor to the debtor's children, is fraudulent if this gift was the consideration of the transfer by the debtor.

5. The sale of the most valuable portion of a debtor's property in anticipation of suits against him and a retention of possession thereafter are sufficient evidences of fraud to avoid the transaction, unless explained by the most satisfactory proof of fair dealing.

6. Suspicious transactions between near relatives require clearer proof in explanation than if they were entirely between strangers.

Before HUDSON, J., Union, March, 1889.

Action by Sarah J. Archer and others, children of Albert G. Means, against J. G. Long, sheriff. The judge charged the jury as follows:

GENTLEMEN OF THE JURY: You have listened patiently; you have manifested a very commendable spirit in doing so through this long and tedious and interesting trial. You have heard all the evidence and the argument of counsel, and you will now hear the law of the case expounded by me, and you will take the law as I give it to you. Should I err in doing so, there is a higher court to correct my errors.

This is an action brought by Sarah J. Archer and several others against J. G. Long, to recover the possession of personal property, consisting of mules, cows, hogs, wagons, and other plantation implements enumerated in the complaint here.   It is not necessary that I should repeat the enumeration.   They claim to be the owners of this property, and allege that the property has been taken by the defendant and wrongfully detained from them.   When they brought this action against the defendant, the defendant had seized this property, and the action is that which is called claim and delivery, where the one that brings the action, if a proper bond is given, can get the property into his possession ; and that the plaintiffs did.   They replevined the property, as it were, by giving a proper bond to the clerk of the court, whereupon the property was delivered over to them ; but it is to abide the event of this suit, the object of which is to try the title to that property, and if the plaintiffs show a good title, they will simply keep the property, which they have in their possession. But if the title should be shown to be not in the plaintiffs, but in those represented by the defendant, who is the sheriff of your county, then the property would have to be returned, given up by the plaintiffs, and handed over to the sheriff to be sold under these executions.

In this action the plaintiffs must recover, if at all, upon the strength of their title.   In order to show their title, they have introduced a bill of sale from Albert G. Means, their father, to Robert Beaty ; and then a transfer by Robert Beaty to them of the property here sued for ; and that was dated on December 30, 1887.   That is all right.   That is a good title, if Mr. Albert G. Means was at that time the owner of the property, and there is no doubt about that.   That is conceded on both sides, that prior to December 30, 1887, Albert G. Means owned this property. He conveyed it to Robert Beaty, and Robert Beaty conveyed it to the plaintiffs.   That is a good title, and will prevail against the defendant, who is your sheriff, unless he can show a better title.   The sheriff is proceeding under executions issued to enforce judgments recovered in the spring of 1888, several months after this conveyance, after the title had passed out of Albert G. Means.   You observe that that, now, does not give the sheriff

any right whatever to take this property, and the plaintiffs' title is *prima facie* good against that of the sheriff, acting as agent of these judgment creditors.

But the judgment creditors assail this title acquired through Robert Beaty, upon the ground that it is void for fraud; that at the time Albert G. Means made the bill of sale to Robert Beaty, that it was done with the view to defraud these very creditors who got their judgments in the following spring, and that there-fore the bill of sale is null and void. If they have made good that assault upon the bill of sale, it will have to give way. But if the bill of sale is not impeachable for fraud, but is valid, why the plaintiffs must recover. And you see the whole question then turns upon the validity of that bill of sale. If that bill of sale is good, why these plaintiffs recover the property. If the bill of sale is void for fraud against those whom the sheriff repre-sents, then the plaintiffs will fail.

Just there, now, I have been requested to charge certain pro-positions of law, and inasmuch as the bill of sale, the plaintiffs' title, is assailed for fraud by the defendant, I will read the re-quests which have been submitted to me by defendant's counsel, containing, in his opinion, the law applicable to the defence.

The first request to charge reads as follows: "That while an insolvent debtor may by *bona fide* mortgages, confessions of judg-ments, or conveyances, intended merely as securities, give a pre-ference to one or more of his creditors, yet if such instruments are really designed and intended to operate, not merely as secu-rities, but as the means of transferring his property to one or more of his creditors in preference over others, they must be de-clared null and void; and it matters not whether there be one or more than one of such papers, if they are connected together, and operate as an assignment, and were intended to give a prefer-ence." That is a correct proposition of law, if the papers amount to a general assignment.

Second. "A conveyance made in payment of a *bona fide* debt is fraudulent and void, if made with intent to hinder, delay, and defraud other creditors." I charge you that this is a correct pro-position of law.

Third. "If Mr. Robert Beaty let Mr. A. G. Means have

money, not intending at the time to require him to pay it back, but merely to account for it as advancements, it cannot be made a consideration sufficient to support a sale. A gift cannot be converted into a charge." That is a correct proposition of law, except that I will say that the word "advancements" there in its technical sense could not be used in speaking of a transaction betwixt Mr. Robert Beaty and Mr. A. G. Means. But the meaning of the proposition, taken all together, is that a gift cannot be afterwards converted into a charge, a debt, or a claim.

Fourth. "A debtor cannot prefer one creditor to another, if the consideration of his doing so is that he receives some benefit to himself for such preference; and, if it was understood before the conveyance of the property to Mr. Beaty that it should be immediately assigned to Mr. Means's children, and if the assignment was any part of the consideration to Mr. Means to execute the conveyance, it is void." If the assignment to his children was the consideration that induced him to do it, why the conveyance would be void. But if the debt was a *bona fide* debt, and Mr. Means was advertised beforehand, or knew beforehand, when he paid the debt to Mr. Beaty, that Mr. Beaty would give the benefit of it to Mr. Means's children, that would not necessarily vitiate the transaction. But the proposition, in the shape in which it is put here by the defendant's counsel, I charge you is correct.

Fifth. "If the conveyance and assignment were so closely connected as to amount to one transaction, it is a very strong badge of fraud." Not necessarily, unless the assignment to the children was the consideration that induced the conveyance by Mr. Means to Mr. Beaty.

Sixth. "In deciding the *bona fides* or the *mala fides* of a conveyance by a debtor of his property, much importance is to be attached to the fact that it was made in payment of a pre existing debt; and that fact, together with the fact that the debtor retained the possession and use of the property, renders the transaction fraudulent, unless the vendee and those claiming under him explain by the clearest and most satisfactory evidence the retention of possession." That is a correct proposition of law, and put in short terms, it is that where one conveys property in

payment of a debt, and still retains the possession of it, that it devolves upon him to show clearly and satisfactorily that his possession is all right. Otherwise it would be a presumption of fraud. But he has a perfect right to show that the possession continued in him in consequence of a good and proper contract with the party to whom he conveyed.

Seventh. "The sale of the whole or the most valuable portion of a debtor's property in anticipation of suits against him, and retention of possession by him, are such strong evidences of fraud as to avoid the transaction, unless explained by the most satisfactory evidence of fair dealing." That is correct. It throws upon the party retaining the property the duty to explain how it is that he is retaining it, and unless he can give a proper explanation of it, why it will be presumptive evidence of fraud—in fact, evidence full.

Eighth. "A transaction between near relatives, between whom there would exist strong natural motives to provide for each other at the expense of honest creditors, when impeached, may be shown to be fraudulent by less proof; and having been shown to be *prima facie* fraudulent, the parties claiming the benefit of such a transaction are held to a fuller and stricter proof of its justice and fairness than would be required if the transaction were between strangers." The substance of that proposition is correct. It is substantially correct: that where suspicious transactions take place between near relatives, you would naturally expect that it should be explained with clearer and more satisfactory proof than if it were entirely betwixt strangers.

Now, by the plaintiffs' counsel I am requested to charge certain propositions. Here is the first one. "The assignment act has no application in any case, unless there is an actual assignment, or a state of facts fully proved or admitted, which in conscience and equity are tantamount to an assignment with unlawful preference." That is correct.

Second. "The question as to whether this sale is void under the assignment act cannot arise and be determined in this action." I will not charge you that proposition.

Third. "To render fraudulent a sale of goods made to pay a

debt, both the vendor and vendee must participate in the fraud."
I charge you that this is a correct proposition of law.

Fourth. "Notoriety of the sale is a strong presumption to rebut
the presumption of fraud, even where the vendor retains posses-
sion." It is, I charge you, a circumstance which you may con-
sider in rebuttal of the presumption of fraud.

Fifth. "A debtor has the right to apply his property to the
payment of his debts; and, even if insolvent, has a right to make
preferences amongst his creditors, provided he does not violate
the terms of the assignment act." I charge you that that is a
correct proposition of law.

Sixth. "An insolvent debtor has as much right—no more and
no less—to transfer property in payment of a debt to a relative
as to any other person." I charge you that that is a correct
proposition of law. He has as much right to pay kin-folks as
anybody else, the debt being *bona fide.*

Seventh. "A debtor may legally sell his property to one of
his creditors pending suit by others, and may retain possession
as bailee for hire, or as agent of the vendee." I charge you that
that is a correct proposition of law; and his possession will not
vitiate the sale, if it is shown to be consistent with fair dealing.

Eighth. "If the sale is otherwise good, and is for an honest
debt, never in fact paid in whole or in part, it is not vitiated by
the fact that the debt upon and for the payment of which the sale
is made is barred by the statute of limitations, or by a presump-
tion of payment arising from lapse of time." I charge you that
that is also a correct proposition of law.

Ninth. "The presumption is against fraud, and a charge of
fraud to avail must be strictly proved." I charge you that that
is a correct proposition of law.

I think that those propositions on both sides are, as I have
charged, almost without any modification, except one little one.

Now let us direct our attention to the main features of this case.
This transaction between Albert G. Means and Robert Beaty is
assailed for fraud by the Means creditors. Fraud is not to be
presumed from the fact that it is charged; but when charged it
must be proved, and must be proved by the preponderance of the
evidence. Therefore those who aver that Albert G. Means and

Robert Beaty committed a fraud when that transaction took place must show it, and show it by satisfactory proof. It is alleged that it was a fraud upon creditors. You must ascertain, as far as you can from the evidence, whether at that time Albert G. Means was actually insolvent. If you come to the conclusion that he was not insolvent, why then it would be more difficult to make a fraud out of the transaction than if it should appear that he was insolvent.

If you come to the conclusion that at that time he was insolvent, then the transaction is not necessarily fraudulent. By no means. An important inquiry is: Did he owe Robert Beaty the money which he intended to secure or attempted to secure by those papers, to wit, the confession of judgment, the mortgage, and the bill of sale? Did he owe Beaty that money? I believe it is stated to be altogether about $15,000. If he did owe the debt, he had a right to pay it—a perfect right. It is not only the right of a man to pay a debt, but it is his duty; and although the debt may be running for some time, yet a man is not bound to plead the statute of limitations. He is not bound to refuse to pay a debt because it is old, and because he has been indulged some time upon it. Whether any part of this was old enough to be barred by the statute of limitations or not, I don't remember, nor is it for me to say. It is for you to say from the evidence. All I have to do is to tell you that a man can rightfully pay a debt, ought to do it morally, although it is barred by the statute of limitations and he could not be made legally to do it if he would take advantage of the statute. Therefore an important inquiry is, did Means owe Beaty? That is a matter you have got to determine, and you have got to determine it upon the testimony that is before you. If Mr. Means has told the truth, he owed the debt. You are to determine whether he has told you the truth or not.

Now, if you come to the conclusion that he owed the debt, then I charge you that he had a right to pay it, even although at the time he was insolvent, and his payment of the debt, or his securing the debt, would be perfectly lawful, if in so doing he did not thereby intend to defeat, delay, hinder, and defraud other creditors. Simply because a man cannot pay all of his debts, he is

not bound to fold his hands and pay none. But his duty would be to go on and pay as far as he can. But the law says that he can't pay one with a fraudulent intent, with the actual intent to defeat and defraud others. But to make the payment invalid, it must be a fraudulent payment. It must be done with a fraudulent intent. If the debt was *bona fide,* and if the debtor and creditor entered into the transaction in good faith, merely to secure that debt, and not to hinder, delay, and defraud other creditors, why the transaction is good. But if it was done with a fraudulent intent as to other creditors, it would not stand.

Now, the question of fraudulent intent is one that must be determined by you, and you have got to determine it upon all the evidence in this case, documentary and oral. The testimony of witnesses, the testimony of the various documents that have been read before you, you must take, and from all that you must decide whether Albert G. Means and Robert Beaty intended in that transaction to cheat and defraud, to defeat, hinder, delay other creditors; or whether it was done with an honest purpose of paying honest debts, or securing the payment of an honest debt. Because, from the weight of the testimony, as gathered by you, if it was done with the honest purpose of paying an honest debt, why then the transaction must stand. Bear in mind what took place before these parties got their judgments; what took place before they even sued. But still, if it was done with a view to defraud them, it will not stand. But if it was done with a view to pay Beaty honestly, and without the intention to defraud other creditors, the transaction will stand in law.

It appears that after the conveyance to Beaty and the transfer to his grandchildren, that the property remained in the possession of Mr. Means, Albert G. Means. That is not of itself proof of fraud; and if the explanation given to you by Albert G. Means be true, it is consistent with the law. He had a right honestly to pay an honest debt and to convey his property for the purpose of paying an honest debt, if it was not with the intention of defeating his creditors; and then he had a right to rent this property from his children, with the view to enable him to continue to work his plantation; and if that contract actually took place, and he actually was holding it as a renter, a hirer,

there is nothing fraudulent in that. You must ascertain from the evidence whether that was the actual arrangement betwixt them; because he had a right to hire stock and plantation implements and everything from his children as well as he had from others. But you must say from the evidence whether he actually did it or not. And they had a right to hire it to their father and to take their father's pay. They had a perfect right to deal with each other. All that is required of them is that it should be fair and open and honest.

So that if you come to the conclusion, under the law as I have tried to explain it to you, that this was an honest transaction on December 30, 1888, the plaintiffs must recover. If you come to the conclusion that the transaction was entered into by Mr. Means and by Mr. Beaty with a view to defraud the creditors who have seized this property, then the transaction will not stand, and the verdict must be for the defendant.

If the verdict is for the plaintiffs, inasmuch as the plaintiffs have possession of the property, you will say: "We find for the plaintiffs the property in dispute." Then if there was evidence of any damage, you will have a right to give damages. But I have heard no evidence of any damages being done to the plaintiff. The property was not removed from the plantation, but they have replevied right there, and have had it ever since; and you can't find damages unless there is proof of damages, unless it be in a case where there is outrageous oppression, and this is not one. So if you find for the plaintiffs, your verdict will be, "We find for the plaintiffs the property in dispute." If you find for the defendant, inasmuch as the plaintiffs have possession, if you find for the creditors, the sheriff being a mere representative, you will say, "We find for the defendant the property in dispute, and we find its value to be so much." Now, I don't remember anything about the testimony as to its value. But if you find for the defendant, you will have to value this property, and fix the value. I forget the evidence on that subject, but you have listened and know. If there is no evidence, you can't find the value, but find the property for the defendant. If you remember evidence of value, you must find a value, if you find the property

for the defendant. And you must let your verdict be in accordance with the testimony and the law as I have given it to you.

Verdict was "for defendant for the property in dispute." Plaintiffs appealed, alleging error as follows:

1. In charging that while an insolvent debtor may by *bona fide* mortgages, confessions of judgment, or conveyances, intended merely as securities, give a preference to one or more of his creditors; yet if such instruments are really designed and intended to operate, not merely as securities, but as the means of transferring his property to one or more of his creditors in preference over others, they must be declared null and void; and it matters not whether there be one or more than one of such papers, if they are connected together, and operate as an assignment, and were intended to give a preference." That is a correct proposition of law, if the papers amount to a general assignment.

2. In charging that a conveyance made in payment of a *bona fide* debt is fraudulent and void, if made with intent to hinder, delay, and defraud other creditors.

3. In charging that a debtor cannot prefer one creditor to another, if the consideration of his doing so is that he receive some benefit to himself for such preference; and if it was understood before the conveyance of the property to Mr. Beaty that it should be immediately assigned to Mr. Means's children, and if the assignment was any part of the consideration to Mr. Means to execute the conveyance, it is void.

4. In charging that if the conveyance and assignment were so closely connected as to amount to one transaction, it is a very strong badge of fraud. Not necessarily, unless the assignment to the children was the consideration that induced the conveyance by Mr. Means to Mr. Beaty.

5. In charging that the sale of the whole or the most valuable portion of a debtor's property in anticipation of suits against him, and retention of possession by him, are such strong evidences of fraud as to avoid the transaction, unless explained by the most satisfactory evidence of fair dealing, and that it would be full evidence of fraud.

6. In charging that transactions between near relatives, be-

tween whom there would exist strong natural motives to provide for each other at the expense of honest creditors, when impeached, may be shown to be fraudulent by less proof; and having been shown to be *prima facie* fraudulent, the parties claiming the benefit of such a transaction are held to a fuller and stricter proof of its justice and fairness than would be required if the transaction were between strangers.

7. In refusing to charge that the question as to whether this sale is void under the assignment act cannot arise and be determined in this action.

8. In refusing to charge that notoriety of the sale is a strong presumption to rebut the presumption of fraud, even where the vendor retains possession.

9. In charging the jury that if they found for the defendant, the verdict should be in the following form: "We find for the defendant the property in dispute, and we find its value to be so much."

10. In subsequently charging the jury that if they found for the creditors, that the "title is void for fraud, and the creditors have a good title," they could find their verdict, "We find for the defendant the property in dispute."

11. In charging the jury that if there was no evidence, they could not find the value, but find the property for the defendant.

12. In refusing the motion for a new trial.

*Messrs. D. A. Townsend, C. H. Peake,* and *W. W. Thomson,* for appellants.

*Messrs. Carlisle & Hydrick,* contra.

February 28, 1890. The opinion of the court was delivered by MR. JUSTICE McIVER. This was an action to recover possession of certain personal property, consisting of mules, cows, hogs, and sundry farming implements. The plaintiffs having given the required bond, took possession of the property very soon after it was levied on by the defendant as sheriff; in fact, it does not seem that the property was ever removed from the plantation where it was levied on. Defendant, by his answer, claimed that

he had levied on said property under executions against A. G. Means, sr., finding the same in his possession on the plantation of said Means; and he prayed that the complaint be dismissed, and "that he have judgment for the return of said property, or for the value thereof, in case a return cannot be had."

It seems that A. G. Means, sr., being at the time heavily indebted, with a considerable portion of his property covered by liens for a large amount, on the 30th of December, 1887, executed a bill of sale to Robert Beaty, sr., for all the property now in question, the consideration recited therein being the sum of twelve hundred dollars. On the same day, said Means confessed a judgment to said Beaty for the sum of $8,254.60, and also executed a mortgage to Beaty on his house and lot in the city of Spartanburg, to secure the payment of the sum of $6,000. Very soon after these papers were executed, and on the same day, 30th December, 1887, all these papers—bill of sale, judgment, and mortgage—were assigned by said Beaty to the plaintiffs, who are the children of A. G. Means, sr., and the grandchildren of Robert Beaty, sr., he being the father-in-law of said Means.

On the 12th of April, 1888, several of the creditors of A. G. Means, sr., obtained judgments against him upon debts contracted prior to the 30th of December, 1887, and under their instructions the defendant, as sheriff, levied upon the property in dispute, which appears to have remained in the possession of said A. G. Means, sr., after said bill of sale was executed up to the time of the levy. The plaintiffs claim the property under the bill of sale which had been assigned to them as above stated, and the judgment creditors, through their representative, the sheriff, insist that said bill of sale was fraudulent, having been executed by the said Means with intent to hinder, delay, and defeat his creditors, and is therefore void; that though given to said Beaty, it was well understood between them that he was immediately to assign the same, as he did do, to the children of said Means; and they also claim that the bill of sale, confession of judgment, and mortgage, all executed on the same day and at once assigned to plaintiffs, was a device resorted to by said Means and Beaty to evade the provisions of the assignment act.

Upon the issues thus presented by these adverse claims, much

testimony was offered in the court below, which it is needless to state, as we have no authority to consider or pass upon any question of fact in a case of this kind, but must confine ourselves to the inquiry, whether there was any error of law in the proceeding below. The Circuit Judge, after instructing the jury as to the various points of law pertinent to the merits of the case, which will be hereinafter considered, instructed the jury as to the form of the verdict as follows: "If the verdict is for the plaintiffs, inasmuch as the plaintiffs have possession, you will say, 'We find for the plaintiffs the property in dispute,'" and then, after speaking of the damages, which is unimportant here, he said: "If you find for the defendant, inasmuch as the plaintiffs have possession, if you find for the creditors, the sheriff being a mere representative, you will say, 'We find for the defendant the property in dispute, and we find its value to be so much'"; and then, after saying that he did not remember any testimony as to value, but leaving it to the jury to say whether there was any such testimony, he again told the jury that if they found for the defendant, they would have to fix the value, adding, however, that if there was no evidence as to value, "you can't find the value, but find the property for the defendant."

The jury having been recalled after they had retired, for the purpose of obtaining some further instructions, which they had asked for, as to the form of their verdict, the Circuit Judge repeated the instructions previously given, and after some colloquy between the judge, the foreman of the jury, and the counsel of either side, in regard to the testimony as to value, the judge again repeated his instructions as to the form of the verdict, and when he had reached the point of telling them that if they found for the defendant, "You will say, 'We find for the defendant the property in dispute,'" he was interrupted by the foreman with this remark: "That is the conclusion we came to, and wrote the verdict, and some of them said that that was not right." The judge thereupon said interrogatively, "You have reached a verdict?" To which the foreman replied, "Yes, sir; and to that effect." The judge then said, "If that is the verdict you have agreed upon, we will receive it." The jury thereupon returned the following verdict: "We find for the defendant the property in dispute."

A motion for a new trial was made upon the ground, that the verdict was contrary to the evidence and the charge of the presiding judge, and upon the further ground, "That the verdict was erroneous in not being in the alternative, and not giving the value of the property designated in the verdict." Upon the hearing of this motion, an order proposed by defendant's counsel, the counsel for plaintiffs being present, but not assenting thereto, in which, amongst other things, it was recited that defendant's counsel had agreed in open court, that if a delivery of the property in dispute cannot be had, they would not ask for its value, was granted, refusing the motion for a new trial. Judgment having been entered in accordance with the verdict, simply for the recovery by the defendant of the property in dispute, describing it as it was described in the complaint, and for costs, the plaintiffs gave notice of appeal upon the several grounds set out in the record, which are not repeated here, as they, together with the judge's charge, should be incorporated in the report of the case.

We propose to consider first the ninth, tenth, and eleventh grounds of appeal, all of which relate to insufficiency in the form of the verdict. The law as to this matter will be found in section 283 of the Code, which reads as follows: "In an action for the recovery of specific personal property, if the property have not been delivered to the plaintiff, or if it have, and the defendant by his answer claim a return thereof, the jury shall assess the value of the property, if their verdict be in favor of the plaintiff, or if they find in favor of the defendant, and that he is entitled to a return thereof; and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding such property." Now, it will be observed that in the first branch of the section which relates to the form of the verdict in respect to the value of the property sued for, the language is imperative—"shall assess the value of the property"—but in the other branch of the section relating to the damages sustained by the taking or detention of the property, the language is permissive only—"may at the same time assess the damages." This necessarily implies that property sued for in an action of this kind always has a value which must be assessed by the jury, but that

there may, or may not, be damages in a given case, and hence the jury is not required, but is permitted, to assess such damages as may have been proved.

It seems to us clear, therefore, that so far as that branch of the section, which requires the jury to assess the value of the property which may be found either for the plaintiff or defendant, is concerned, the statute is mandatory and not directory merely; and such has been the uniform ruling of this court. *Robbins* v. *Slattery,* reported in note, 30 S. C., 328; *Eason* v. *Miller & Kelly,* 18 *Id.,* 381; *Thompson* v. *Lee,* 19 *Id.,* 489; *Lockhart* v. *Little,* 30 *Id.,* 326. It is urged, however, that in the three cases first cited (the last not bearing directly upon the immediate point under consideration), the verdicts and judgments were for the value of the property only, and hence do not apply. That is true as to the case of *Robbins* v. *Slattery,* though not as to the other two cases; but even admitting it to be so, we do not see how that can affect the question here. Those decisions proceeded upon the ground that the statute having prescribed the form of verdict in this class of cases, a verdict in any other form could not be regarded as a legal verdict. Whether this is a wise and proper statutory provision is not for us to consider. It is sufficient for us to say, *Ita lex scripta est.*

It is further urged, that it was incumbent upon the plaintiffs to prove the value of the property for which they were suing, and to allow them to take advantage of their failure to offer testimony upon that point would be permitting them to take advantage of their own wrong. We are unable to appreciate the force of this position. Inasmuch as the plaintiffs, by giving bond, had acquired possession of the property in dispute, it was quite as much, if not more, to the interest of the defendant to prove the value of the property, the possession of which he was seeking to regain, as it was for the plaintiffs to make such proof. Indeed, in the attitude which the case had assumed by the delivery of the property to the plaintiffs, the defendant had practically become plaintiff, seeking to regain possession of the property; and if that could not be had, then he would be entitled to a judgment for its value.

Again, it is urged that the defect in the verdict can only be taken advantage of by the defendant; and as he has waived his

right to do so, the verdict should be permitted to stand. We do not see how such waiver can have the effect of supplying a deficiency in a verdict confessedly not in the form required by law. It is a void verdict (*Eason* v. *Miller & Kelly, supra*), and the deficiency which makes it so, cannot be supplied by the act of one of the parties only. See, also, *Thompson* v. *Lee, supra*, where it was held that the release by the defendant of his claim on the horse sued for, entered on the record, could not validate the verdict.

On this ground, therefore, the so-called verdict must be set aside and a new trial ordered, without prejudice as to the merits of the case.

As this is decisive of the case, it is scarcely necessary to consider any of the other grounds of appeal. But as they have been presented, it is, perhaps, proper that we should dispose of them to avoid controversy as to them in the next trial.

The first ground certainly cannot be sustained, as the proposition there complained of is taken, substantially, from the recent decision of this court in the case of *Meinhard* v. *Strickland*, 29 S. C., 491.

The second ground is disposed of by the case of *Lowry* v. *Pinson*, 2 Bail., 324, and the other cases to the same effect.

That the third, fourth, and fifth grounds are without foundation may be seen by reference to the following cases: *Smith* v. *Henry*, 1 Hill, 16; *Bird* v. *Aitken*, Rice Ch., 78; *Maples* v. *Maples, Ibid.*, 300; *Nelson* v. *Good*, 20 S. C., 223; *Werts* v. *Spearman*, 22 *Id.*, 200.

As to the sixth ground, it will be sufficient to say that the Circuit Judge did not charge as there represented. His charge was, "that where suspicious transactions take place between near relatives, you would naturally expect that it should be explained with clearer and more satisfactory proof than if it were entirely betwixt strangers." This was stating no more than a proposition founded in the principles of human nature—that one would be much more apt to make a voluntary disposition of his property in favor of near relatives than in favor of strangers—and this proposition seems to be sustained by the authorities cited in respondent's argu-

ment—*Burt* v. *Timmons* (29 W. Va., 441; 2 S. E. Rep., 787) and *Livey* v. *Winton* (30 W. Va., 554; 4 S. E. Rep., 457).

There was no error in refusing to charge, as is complained of in the seventh ground of appeal, for that depended largely upon a question of fact, which the Circuit Judge had no power to decide.

The eighth ground also does not correctly represent the judge's charge, for he did instruct the jury that the notoriety of the sale was a circumstance to be considered in rebuttal of the presumption of fraud arising from retention of possession, and that was as far as he could have gone without invading the province of the jury.

The judgment of this court is, that the judgment of the Circuit Court be reversed upon the first point herein considered, and that the case be remanded to that court for a new trial without prejudice.